THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE KINGS COUNTY GAS AND ILLUMINATING COMPANY, Respondent, *v.* CHARLES A. SCHIEREN, as Mayor of the City of Brooklyn, JOHN R. SUTTON, as Auditor of the City of Brooklyn, and GEORGE W. PALMER, as Comptroller of the City of Brooklyn, Appellants. Nos. 1 and 2.

*Peremptory mandamus — not issued to compel a judicial determination in a particular way — contract with the board of improvement of the town of New Utrecht — enforcible against the city of Brooklyn.*

Courts will not command an inferior tribunal or a ministerial officer to decide a question in a particular manner when the duties which are required to be performed are in their nature judicial. All acts which depend upon the decision of a question of law or the ascertainment and determination of a fact are judicial.

PEOPLE ex rel. KINGS CO. GAS CO. *v.* SCHIEREN. 221

Hun.] Second Department, July Term, 1895.

A subordinate body can be directed to act, but cannot be directed to act in a particular manner, in a matter as to which it has the right to exercise its judgment.

In a proceeding instituted by mandamus to compel the auditor of the city of Brooklyn to audit the claims presented by the Kings County Gas and Illuminating Company at specified sums, and to compel the mayor and comptroller of said city to approve said claims and to draw and certify warrants for said sums upon the city treasurer, it appeared that the claims were for gas furnished by the said company to the town of New Utrecht pursuant to a contract made with the board of improvement of said town; that the town of New Utrecht was annexed to the city of Brooklyn on July 1, 1894, by chapter 451 of the Laws of 1894, and that the money raised by taxation to defray the expense of supplying said town with gas for that year had been, pursuant to the provisions of said annexation act, paid over to the treasurer of the city of Brooklyn and was in his possession. No question was raised as to the validity of the contract nor was the fact denied that the gas was supplied pursuant to the provisions thereof.

*Held*, that the relator was entitled to have its claims examined and audited by the officers of the city of Brooklyn and to enforce such duties by a writ of mandamus.

In such mandamus proceedings it further appeared that the city officers of the city of Brooklyn stood in the place of the board of improvement of the town of New Utrecht, and that by the contract the board of improvement was charged with the duty of determining the quality of the gas furnished and the number and condition of the lamps lighted and burning during the period covered by the claims of the company.

*Held*, that this duty involved the consideration of the evidence upon the subject, and the determination of the fact, including the amount actually due to the company for the gas furnished under the contract, which were in their nature judicial, and that a peremptory mandamus directing the mayor to draw and certify warrants upon the treasurer should not be granted, and that a peremptory mandamus should not be issued to the auditor of the city of Brooklyn commanding him to audit the claims presented by the gas company at specified sums and directing the mayor and comptroller of said city to approve said claims and to draw and certify warrants for said sums upon the city treasurer, but that a peremptory mandamus should be issued directing the comptroller and auditor forthwith to examine said claims and the auditor to certify to the services performed by the company and the value thereof according to the contract.

Appeal by the defendants, Charles A. Schieren, as mayor of the city of Brooklyn, and others, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 2d day of April, 1895, directing that a peremptory writ of mandamus issue out of and under the seal of the Supreme Court directed to John R. Sutton, as

222 PEOPLE ex rel. KINGS CO. GAS CO. *v.* SCHIEREN.

SECOND DEPARTMENT, JULY TERM, 1895.          [Vol. 89.

auditor of the city of Brooklyn, commanding him to audit the claim presented by the relator, and directed to Charles A. Schieren, as mayor, and to George W. Palmer, as comptroller of the city of Brooklyn, directing them and each of them to approve the said claim of the relator and to draw and certify a warrant upon the city treasurer for a specified sum.

Also, appeal by the defendants, Charles A. Schieren, as mayor of the city of Brooklyn, and others, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 20th day of April, 1895, directing that a peremptory writ of mandamus issue out of and under the seal of the Supreme Court directed to John R. Sutton, as auditor of the city of Brooklyn, commanding him to audit the claim presented by the relator, and directed to Charles A. Schieren, as mayor, and to George W. Palmer, as comptroller of the city of Brooklyn, directing them and each of them to approve the said claim of the relator and to draw and certify a warrant upon the city treasurer for a specified sum.

*Alfred E. Mudge*, for the appellants.

*William J. Kelly*, for the respondent.

BROWN, P. J. :

We have before us two appeals in proceedings entitled as above, both from orders directing that a peremptory mandamus issue to the auditor of the city of Brooklyn, commanding him to audit the claims presented by the relator at specified sums, and directing the mayor and comptroller of said city to approve said claims and to draw and certify warrants for said sums upon the city treasurer.

The claims are for gas furnished by the relator to the town of New Utrecht pursuant to a contract made with the board of improvement of said town, and cover the two quarter years ending respectively June 30 and September 30, 1894.

The town of New Utrecht was annexed to the city on July 1, 1894, and the money raised by taxation to defray the expense of supplying said town with gas for that year has been, pursuant to the provisions of said annexation act, paid over to the treasurer of said city and is now in his possession.   (Chap. 451, Laws 1894.)

No question arises upon the papers before us as to the validity of the contract between the relator and the said board of improvement, nor is the fact denied that gas was supplied pursuant to the provisions of said contract during the periods named in the relator's bills, and we are of the opinion that the facts clearly entitled the relator to have the claims examined and audited by the officers of the city.

The contention of the appellants, that the relator should be left to pursue its remedy by action against the city, is clearly unsound. I think that no action at law could be maintained against the city upon the contract itself. The 4th section of the annexation act provides that " the city of Brooklyn shall not be or become personally liable to pay any debt of the town of New Utrecht, or any part or body thereof, contracted or incurred prior to the time this act shall take effect; nor shall any property within the limits of said city, as constituted prior to the passage of this act, be taxed to pay any such debt, liability or obligation." So far as the bills before the court are concerned, the money to pay them has been collected from the property of the town and paid over to and is now in the possession of the treasurer of the city. The bills must be paid from that fund, and it is held by the treasurer as a special trust. With reference to its disbursement the appellants had ministerial duties only to perform, and it is incumbent upon them to ascertain and inform themselves as to the terms of the contract and to execute it with reasonable diligence. To the enforcement of such duties the writ of mandamus is the proper remedy.

We are of the opinion, however, that the court erred in determining the amount at which the bills should be audited and paid.

It is a settled rule applicable to the remedy by mandamus that courts will not command an inferior tribunal or a ministerial officer to decide a question in a particular manner, when the duties which are required to be performed are in their nature judicial, and all acts which depend upon the decision of a question of law or the ascertainment and determination of a fact are considered judicial. In *People ex rel. Francis* v. *Common Council of the City of Troy* (78 N. Y. 33) the rule is stated as follows: " The office of the writ of mandamus is in general to compel the performance of mere ministerial acts prescribed by law. It may also be addressed to subordinate judicial tribunals, to compel them to exercise their functions, but never to

224 PEOPLE ex rel. KINGS CO. GAS CO. *v.* SCHIEREN.

Second Department, July Term, 1895. [Vol. 89.

require them to decide in a particular manner. It is not, like a writ of error or appeal, a remedy for erroneous decisions. (*Judges of Oneida Common Pleas* v. *People*, 18 Wend. 92–99, and cases cited.) This principle applies to every case where the duty, performance of which is sought to be compelled, is in its nature judicial, or involves the exercise of judicial power or discretion, irrespective of the general character of the officer or body to which the writ is addressed. A subordinate body can be directed to act, but not how to act, in a matter as to which it has the right to exercise its judgment. The character of the duty, and not that of the body or officer, determines how far performance of the duty may be enforced by mandamus. Where a subordinate body is vested with power to determine a question of fact, the duty is judicial, and though it can be compelled by mandamus to determine the fact, it cannot be directed to decide in a particular way, however clearly it be made to appear what the decision ought to be."

In *Howland* v. *Eldredge* (43 N. Y. 457) a mandamus was issued directing the defendants, who were assessors of the town of Springport, to make and swear to their affidavit that a majority of the taxpayers of said town, owning more than one-half of the taxable property therein assessed and appearing on the assessment roll, had duly assented in writing to the issuing of town bonds in aid of the construction of a railroad. This order was reversed in the Court of Appeals, Judge Grover saying, in his opinion, that however clearly it was made to appear to the court that the requisite consents had actually been obtained, a mandamus would not be granted to compel the assessors to make such an affidavit; that the power was given to them to examine the evidence upon the question, and it was upon their conclusions that the power to bond the town depended, and not upon that of any other tribunal; that, consequently, they could be compelled to proceed and determine the matter, but could not be compelled to decide in any particular way.

To the same effect are numerous authorities (*People ex rel. Phœnix* v. *Supervisors*, 1 Hill, 362; *People ex rel. Myers* v. *Barnes*, 114 N. Y. 317; *People ex rel. Johnson* v. *Supervisors*, 45 id. 196; *People ex rel. Gardenier* v. *Supervisors*, 134 id. 1); and it is said by a learned text writer that there is not a case where the Court of

King's Bench has ordered an inferior court to render a particular judgment.

The respondent cites the case of *The People ex rel. Ready* v. *The Mayor & Common Council of Syracuse* (144 N. Y. 63) as sustaining the orders in this respect. In that case, however, the contract provided that the engineer should make up his final account of the work and return it to the common council duly verified by him, whereupon the common council should review, and, when satisfactory, approve the same. Such a certificate had been given by the engineer, and had never been impeached or attacked by the city, and the court held that it was binding and conclusive upon all parties, and could not, in an application for mandamus, be assailed by the ministerial officers of the city. It will be observed that in that case it does not appear that the officers proceeded against had any duties to perform which were in their nature judicial, and it was not sought to enforce the performance of any such against them.

Of course, it is not claimed that the rule under discussion has any application to a case where the amount due to the relator is fixed by law or by the operation of any provision of the contract.

In the case before us, the power of the court is limited to compelling the appellants to carry out and execute the terms of the contract with the relator, so far as duties in reference thereto have devolved upon them by the annexation act. In respect thereto they stand in the place of the board of improvement of the town, and, if it appears from the contract that that board was charged with the determination of any fact which it is essential to ascertain in order to determine the amount due to the relator for gas supplied to the town, then we may compel the appellants to exercise their functions, but we cannot require them to determine that a particular amount is due and unpaid.

The contract contains the following provisions, which are material upon the questions under discussion. The party of the second part (being the relator) agrees:

" Sec. 6. To furnish a fixed or permanent illuminating gas of such quality and supplied at such pressure as to secure the consumption throughout the entire town of New Utrecht of the amount and quality contracted for, and which shall have an illuminating power

226 PEOPLE ex rel. KINGS CO. GAS CO. *v.* SCHIEREN.

SECOND DEPARTMENT, JULY TERM, 1895. [Vol. 89.

of not less than twenty (20) candles when tested at the place of manufacture by the improved form of Benson photometer, using the most improved burner and standard candles."

" 7. To allow the party of the first part to ascertain at any time, by actual experiment, the rate of pressure, the size of burners, the amount of gas supplied and the quality thereof, and any person authorized by the party of the first part shall be allowed to test the illuminating power of the gas at the works or office of the said party of the second part. * * * The party of the first part also reserves the right to test the quality, specific gravity and pressure of gas and size and capacity of the burners at any time and in any portion of the town, and the party of the second part hereby agrees to pay all expenses connected with or arising from such tests."

" 8. In case of default in either the amount or quality of the gas supplied, from whatsoever cause, a corresponding reduction shall be made in the quarterly bills rendered."

" 14. The number of lamps to be lighted as now estimated is five hundred, but the party of the first part reserves the right to increase the number of lamps to be lighted at any time, and the party of the second part hereby agrees to extend the mains as required from time to time, and to receive, as full compensation for all gas furnished and services performed, an amount equal to the product of the number of lamps actually lighted multiplied by the price as stated in this contract for furnishing gas to each lamp."

Section 16 is a timetable for lighting and extinguishing street lamps, varying for every fifteen days throughout the year.

" 17. The party of the first part shall have power to employ inspectors, whose duties shall be to patrol the streets, avenues and highways, and report to the party of the first part the actual number of lamps lighted and the condition of lamps, posts, burners, glass and appurtenances, the actual number of and location of lamps unlighted and the reason therefor; and the party of the first part is hereby authorized by the party of the second part to make *pro rata* deductions, when payments are made, for all unlighted lamps, and although the lamps may have been lighted, that shall not be considered any evidence that they continued to burn; and if, through the inspectors, lamps are reported unlighted during the hours fixed for lighting, deductions shall be made; it being the duty of the party

of the second part to keep all lamps in such condition that they will continue to burn."

" 24. Upon the full and satisfactory completion of the work to be done under this contract and specifications, the party of the first part agrees to pay or cause to be paid to the party of the second part the sum of twenty-eight (28) dollars per lamp per annum for each and every lamp lighted and maintained in the manner hereinbefore provided for."

It will be observed that the reports of the inspectors, as to unlighted lamps, is made binding upon the relator, but is not conclusive upon the board of improvement. Also, that deductions for failure to comply with any of the provisions of the contract are to be made by the board of improvement, when payments are made, which times by the 25th provision of the contract were fixed for the tenth days of April, July, October and January. One needs only to read these provisions of the contract to see that the board of improvement was charged with the duty of determining the quality of gas furnished, and the number and condition of lamps lighted and burning during the period covered by any bill of the relator. This duty involved the consideration of the evidence upon the subject and the determination of the fact, including the amount actually due to the relator for the services rendered under the contract. This duty has, by the annexation act, been devolved upon the officers of the city, and is to be performed in accordance with the provisions of the city charter. The method prescribed by the charter for the payment of bills against the city is substantially as follows: All claims must be presented to the comptroller of the city, specifying the details thereof, who may require the claimant to appear before him and be examined on oath, submit to his inspection all books, papers and documents in reference thereto. (§ 30 of title 22 of chap. 583 of the Laws of 1888, as amended by chap. 568, Laws 1894.) It is the duty of the auditor to examine all bills presented against the city for payment, and no claim can be paid until he shall certify that the services have been rendered, and that the charges are reasonable or according to contract. (Laws 1888, chap. 583, tit. 5, § 1.)

Money is drawn from the treasury upon warrants signed by the mayor and comptroller jointly, and upon vouchers examined and

allowed by the auditor and approved by the comptroller, examined and certified by the mayor. (Tit. 5, § 2; tit. 3, § 11.)

We agree with the respondent that but one presentation of a claim against the city is necessary, and when a bill has been presented to the comptroller, and is in his possession, it is the duty of the auditor to examine it. How and when he shall obtain possession of it is a matter to be regulated in the finance department and is no concern of the claimant. In neither of the cases before us is it denied that the claims in suit were presented to the comptroller more than thirty days before the proceedings were instituted, and the failure of the auditor and comptroller to act upon them entitled the relator to a mandamus. But the duties which appellants are required to perform in reference to the relator's bills are clearly judicial in their character, and they cannot be directed to audit or certify the bills at a particular amount. They are entitled to exercise their own judgment upon the evidence before them, and to determine therefrom the number of lamps for which the relator is entitled to be paid for the periods covered by its bills and to make the proper deductions therefrom.

It is also apparent from the provisions of the charter referred to that the orders appealed from cannot be sustained against the mayor. The examination of the bills, and the determination of the amounts due thereon by the auditor and the comptroller, precedes any duty imposed upon the mayor. Until the voucher is allowed by the auditor and approved by the comptroller he is not required to act, and cannot be declared to be in default, and it must be assumed that when a proper voucher is presented to him, he will examine and certify to it, and sign the necessary warrant for its payment.

The claim of the relator, that the mayor and comptroller should have signed a warrant for the bill for the quarter ending June thirtieth, upon the audit of the board of improvement of the town, cannot be sustained. That claim was overruled by Justice CULLEN on the first application for a mandamus, and we agree with his conclusion that the bill not being due until July first, the board of improvement had no power to act upon it.

The orders appealed from, so far as they direct the mayor to draw and certify warrants upon the treasurer, are reversed, and in other respects are modified so as to direct the comptroller and auditor forth-

with to examine said claims, and the latter to certify to the services performed by the relator, and the value thereof according to the contract, and as so modified the orders are affirmed, without costs.

In case No. 1, DYKMAN and PRATT, JJ., concurred.

In case No. 2, DYKMAN, J., concurred; PRATT, J., not sitting.