HON. DAVID JOHNSON,
HON. GEORGE MARTIN,
HON. SAMUEL T. DOUGLASS, } Judges.
HON. ABNER PRATT,
HON. CHARLES W. WHIPPLE,

THE PEOPLE *ex. rel.* D. B. DUFFIELD *vs.* B. C. WHITTEMORE, State Treasurer.

THE PEOPLE *ex. rel.* D. McINTYRE *vs.* B. C. WHITTEMORE, State Treasurer.[*]

Upon the presentation of the circulating notes of a Bank at the counter for redemption, the mode of redeeming adopted by the Bank officers, was to take up, and separate from the rest, one bill at a time, examine it, step back to a

[*] This case is deemed of sufficient importance to be reported here, as an adjudication upon a subject of great interest to the public. The opinions of the Judges were delivered orally, and are reported in a very condensed form; but, it is believed, with substantial accuracy.

The People *ex. rel.* D. B. Duffield *vs.* B. C. Whittemore, State Treasurer.
The People *ex. rel.* D. McIntyre *vs.* B. C. Whittemore, State Treasurer.

table, pick up the requisite amount of coin, and pay over to the bill holder ; and so proceed, redeeming the notes one by one, until the .close of banking hours, and then refuse to redeem further for the day.   The officers also tendered to the bill holders bags of coin, at the sums marked thereon, but on condition that there should be no recourse to the Bank for the correction of errors, if any, but to those only from whom the Bank itself received the coin. The Bank also refused to employ more than one person to redeem its circula-ting notes; and large amounts presented were refused redemption, upon the claim that the Bank was unable to ·make further redemption during banking hours.   *Held,* that the course of the Bank officers was evasive, and tantamount to a refusal to redeem.

The provision in the charter of the Government Stock Bank, that upon filing affidavit of refusal to redeem, etc., with the State Treasurer, he shall thereupon give notice that the notes of said Bank will be redeemed at his office, makes it the duty of the Treasurer to act at once.   He has no right to delay for counter affidavits from the Bank.

The delay of the Treasurer to act upon the presentation of the affidavit, was tantamount to a refusal to act.   (WHIPPLE, J., and MARTIN, J., dissenting.)

*Per* MARTIN, J.   There should be a direct affirmation of the Bank's refusal to redeem in the affidavit filed with the Treasurer.   If facts are presented, the Treasurer must consider and decide whether they amount to a refusal to redeem.   This converts his functions from ministerial into judicial.

These were two applications for writs of mandamus to the State Treasurer, commanding him to give notice that the notes of the Government Stock Bank, at Ann Arbor, would be redeemed at the State Treasurer's office.   Section seven of the Charter of said Bank provides as follows :

"If said corporation shall at any time, *or under any pretence,* refuse on demand at its office, during the usual and regular banking hours, 'to pay any of its notes in the lawful currency of the United States of America, the holder of said note may make and file his affidavit of that fact with the State Treasurer, *who shall* THEREUPON *give notice that the notes of said Bank will be redeemed at his office." Sess. Laws,* 1849, *p.* 250, *sec.* 7.

The State Treasurer is then required to sell, within twenty days, so much of the stocks deposited with him, as shall be necessary to redeem any notes of the Bank.

The People *ex. rel.* D. B. Duffield *vs.* B. C. Whittemore, State Treasurer.
The People *ex. rel.* D. McIntyre *vs.* B. C. Whittemore, State Treasurer.

The applications were founded on affidavits, which were very long, and detailed the facts involved very minutely, but in substance it appeared : that on the 28th of June last, the relator, Duffield, filed an affidavit with the State Treasurer, and on the 1st of July, the relator, McIntyre, filed another affidavit with the same officer. These affidavits showed that the relators had, at numerous times, from the 1st of June to the 28th of the same month, presented various amounts of notes of said Bank at its office, during regular banking hours, and demanded payment of the same ; that the mode of redemption adopted by the officers of the Bank was, when a package of bills was presented, to take up one bill at a time, separate it from the rest, examine it, step back to a table and pick up the requisite amount of coin, and pay it over to the relators, and so proceed paying the notes one by one, till banking hours expired, when the Bank refused to make any further redemptions for the day. The Bank, at various times, tendered to the relators bags of coin, at the sums marked thereon, but only on condition that there should be no recourse to the Bank for the correction of errors, but the relators should only have recourse to those from whom the Bank itself received the coin. The sums presented by the relators in any one day rarely exceeded $5,000; in a few instances, sums as large as $10,000 were presented in a day, but notice was generally given to the Bank of such present- ment on a previous day. The Bank refused to count the money and redeem in the usual manner ; refused to employ more than one person to redeem ; insisted on redeeming the notes one by one ; and made nearly all its redemptions in gold dollar pieces. The amount redeemed in this manner averaged about $3,000 per day. Large amounts of notes presented were refused redemption, under the pretence that the Bank was unable to make any further redemptions during its banking hours. The officers of the Bank, were, however,

The People *ex. rel.* D. B. Duffield *vs.* B. C. Whittemore, State Treasurer.
The People *ex. rel.* D. McIntyre *vs.* B. C. Whittemore, State Treasurer.

always studious and careful to say that they would redeem as fast as they could.

On these facts the relators demanded of the State Treasurer that he should give public notice that the bills of the Bank would be redeemed at his office. The Treasurer said he would consult the Attorney General. On the third day of July, about four o'clock, P. M., the Attorney of the relator received a letter from the Treasurer, saying that Messrs. Frazer and Van Dyke, counsel for the Bank, had addressed him a communication, requesting time to prepare and file with him counter affidavits, that the said Treasurer thought it reasonable to grant such time (reserving the question of the competency of such affidavits), and that he would give a decision the following week, probably on Saturday, the 10th of July. The Attorney of the relators at once called on the Treasurer, and demanded that he should at once give the public notice, but he refused, and referred the Attorney to his aforesaid letter.

The relators treated this as a refusal on the part of the Treasurer to perform the duty prescribed by law, and at once gave notice that they should apply for a writ of mandamus.

*G. V. N. Lothrop,* for relators, cited 3 *Mason, U. S. C. C. R.,* 1; 8 *Cow.,* 88.

*W. Hale,* Attorney General, and *A. D. Frazer,* counsel for respondent, read an affidavit of Mr. Hale, to show that the delay of the State Treasurer was not unreasonable. To this affidavit was annexed the communication of Messrs. Frazer and Van Dyke, counsel for said Bank, to said Treasurer.

*Mr. Frazer* cited 45 *E. C. L. R.,* 186; 30 *Ib.,* 80, 132.

The case was heard July 6th, and now on the 7th day of July the Judges delivered their opinions *seriatim.*

WING, P. J.

It is clear from the papers that the Bank had refused *to*

redeem according to law. But the counsel for the respondent rest their opposition to the application on the ground that there has been no refusal by the State Treasurer to give the public notice required by law. Now it appears that one of the affidavits had been in the Treasurer's hands about a week, and the other two or three days. He then writes to the relators' Attorney a letter, which seems drawn with care, stating that he shall postpone action for a week more, in order to enable the Bank to file counter affidavits. This is the main reason for delay. Delay for such a purpose was, in effect, a refusal. The Treasurer had no right to receive such affidavits; delay for such a purpose was delay for the purpose of going out of the line of his duty; and the relators had a right to regard it as a refusal. I think the application of the relators should be granted.

PRATT, J.

The meaning and object of the law is clear. The State Treasurer is merely an agent under the law. His function is to carry it out. If he has made a mistake, this is the tribunal, and an application for a mandamus the mode for the correction of the mistake. The affidavit on which the Treasurer is called to act, should certainly clearly show that there has been a refusal to redeem by the Bank. Yet it is no objection that the affidavit shows the facts which constitute such a refusal. The sole question for the Treasurer to decide was, whether the affidavit showed a regular presentation of the bills to the Bank, and a refusal to redeem. If it did, his duty was to give the notice required by law. Now I look on the affidavits as clearly showing a refusal to redeem on the part of the Bank. A Bank may be generally entitled to banking hours, but it does not follow that it is entitled in all cases to stop redemptions at once when banking hours expire. Exceptions may be put; it is the duty of a Bank to redeem

its notes promptly and in good faith. The Treasurer was bound to act on the affidavit promptly. If it showed affirmative facts of delay or evasion in redeeming, that was sufficient for him to act on, and he was bound to act. He should, indeed, have reasonable time to examine the affidavits. And if his delay stood on that ground, I might hesitate. But he had no right or power to give the Bank a hearing. And when the reason of delay is an illegal one, the delay amounts to a refusal. On the merits of this motion I have no difficulty. The motion should be granted.

JOHNSON, J.

I concur entirely with the Presiding Judge. The affidavits clearly show a refusal of the Bank to redeem its notes. In this the Court is unanimous. There was evasion by the Bank, which is equivalent to refusal. Now, if it was clear and obvious on the face of the affidavits that there was a refusal, the Treasurer could as readily perceive it as any one else. It was the purpose of the law that there should be a speedy relief—a prompt remedy—and this without litigation. This litigation to enforce bank redemption, was an evil we had all felt. I think the form of the affidavit proper. It should present the facts, and not merely a conclusion. It was the duty of the Treasurer to act at once. I think twenty-four hours would have been a reasonable time for the examination of the affidavits. If there was a refusal by the Bank to redeem clearly shown, the Treasurer should have said so ; if this was not shown, he should have said so. His proposition to delay and receive counter affidavits, was tantamount to a refusal to act.

DOUGLASS, J.

I can see nothing in the objection, that the affidavits filed with the State Treasurer do not state in express terms, that

The People *ex. rel.* D. B. Duffield *vs.* B. C. Whittemore, State Treasurer.
The People *ex. rel.* D. McIntyre *vs.* B. C. Whittemore, State Treasurer.

the Bank had refused to redeem its bills.   The main question is, whether the facts therein stated amount to such refusal? If they do, I think the affidavits are sufficient.

Now, it was clearly the duty of the Bank to redeem its notes on presentment, with ordinary and reasonable expedition.   This, the affidavits show, the Bank refused to do.  But its officers, while expressing a willingness to redeem as fast as they could, persisted in redeeming only in a particular manner, which was extremely and unnecessarily dilatory, and was so unusual and inconvenient that it was manifestly resorted to for the sole purpose of delay.   I fully concur in the opinion of the other members of the Court, that the course pursued by the Bank amounted, within the true extent of the statute, to a refusal to redeem.

If so, it were clearly the duty of the State Treasurer promptly to give notice that the notes of the Bank would be redeemed at his office.   It is claimed that he had not refused to perform this duty when the present application for a mandamus was made.   I cannot see any good reason why this objection should be very strenuously insisted upon on behalf of the State Treasurer ; nor do I think we are called upon to decide it upon any very nice or technical grounds.   After the affidavits had been before him, for what would seem to have been ample time to enable him to decide as to what action he would take upon them, he postponed the decision a week longer, to give the counsel for the Bank an opportunity to produce counter affidavits.   Such counter affidavits were clearly inadmissible ; and I think such a postponement, after the delay which had already occurred, and for such a purpose as was assigned for it, ought to be deemed a refusal to perform the duty which the law enjoined upon him.

WHIPPLE, J.:

I have not come to the same conclusion with the Presiding Judge.   We differ only on one point : and that is, whether

the delay of the State Treasurer amounted to a refusal. I think it did not. I think, under the circumstances, he had a right to take time for further consideration, as he proposed to do. On the other point I have no doubt. The affidavits show unequivocally that the Bank had refused to redeem its bills. But as I am of opinion that the Treasurer has not unreasonably delayed action, I think the application should not be granted.

MARTIN, J.

I agree with Judge Whipple. I have also one other view in which I differ from my associates. I think the affidavit should in form be absolute—that is, directly and affirmatively aver a refusal of the Bank to redeem. It is not sufficient to set forth facts which amount to a refusal, or from which a refusal arises by construction. This I think to be the rule in all cases of special proceedings. There should be a direct and positive affirmation of a refusal. If facts are presented, the Treasurer must consider and decide whether such facts amount to a refusal, and this converts his functions from ministerial into judicial. I do not, however, doubt but the facts stated in the affidavits amount to a refusal of the Bank to redeem.

Frazer then insisted that the mandamus should be *alternative* in the first instance, and cited *R. S.*, 593; 3 *Burr*, 96; 20 *Pick.*, 484; 2 *Metc.*, 579.

Lothrop cited 14 *J. R.*, 324; 7 *Cow.*, 526; 2 *Burrill Prac.*, 178.

But the Court held that it appeared that all the material facts which could come before the Court on an answer from the State Treasurer, had been substantially conceded in the case: that the Bank could not become a party to these proceedings; and that the truth of the facts set forth in the affidavits filed with the Treasurer could not be put in issue

by any return to the State Treasurer. The Court was, therefore, of opinion that the relators were entitled to writs of peremptory mandamus. Granted accordingly.

Judges Whipple and Martin gave no opinion on this last point.

Judges Green and Copeland were not present.