THE PEOPLE ex rel. AARON B. GARDENIER, Respondent, *v.*
THE BOARD OF SUPERVISORS OF THE COUNTY OF COLUMBIA,
Appellant.

The duty of prosecution for criminal offenses committed in a county
devolves upon its district attorney, and as incidental thereto, he has
the power to do that which is essential to such prosecution. (1 R. S.
383, § 89.)

All expenses necessarily incurred by said officer in the performance of
such duty, or the exercise of the power are a county charge. (1 R. S.
385, § 3.)

The duty embraces whatever is essential to bring a criminal to trial, as
well as the proceedings on trial; and so, if he is in a foreign jurisdic-
tion, it includes efforts to effect his arrest and custody for the purposes
of extradition, in order that he may be brought within the jurisdiction
of the court.

It is not essential to such arrest and custody that extradition proceedings
should first have been instituted.

A claim of a district attorney for expenses necessarily incurred by him in
procuring such an arrest and imprisonment is not within the prohibition
of the Penal Code (§ 51), which makes it a misdemeanor for an officer
of the state to ask or receive compensation for expenses incurred in
procuring the extradition of a fugitive from justice.

One C having been indicted in Columbia county for forgery, fled to
Canada. The relator, who was district attorney of that county, went to

Canada, instituted proceedings and procured the arrest and imprisonment of C. until, through extradition proceedings instituted by him, he procured the return of the prisoner to said county. The board of supervisors of said county refused to audit, allow and provide for the payment of the relator's necessary expenses in Canada for the purposes specified. In proceedings by mandamus to compel such audit, etc., *held,* that the said expenses were a proper county charge; and that the relator was entitled to the writ.

Reported below, 56 Hun, 17.

(Argued December 21, 1892; decided May 31, 1892.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made February 4, 1890, which reversed a judgment in favor of plaintiff, sustaining a demurrer to an alternative writ of mandamus and directed that a peremptory writ issue.

It appeared that John H. W. Cadby, who was indicted in Columbia county in April, 1886, for the offense of forgery, had before then fled from the county to the dominion of Canada; that the relator, who was district attorney of that county, having learned that Cadby was at Hamilton, in the province of Ontario, went there in March, 1886, for the purpose of instituting proceedings in the courts of that dominion to secure his apprehension, with a view to extradition. The relator had with him a warrant against Cadby, issued by a police justice of the city of Hudson, and proceedings were taken at Hamilton for his arrest, but before it was accomplished he fled from there to the city of Halifax, in the province of Nova Scotia, to which place the relator pursued him and there caused his arrest, with a view to have him taken to Hamilton, before the magistrate there, who issued the warrant. But that such purpose was interrupted by his discharge from custody by means of a writ of habeas corpus in the province of New Brunswick, where new proceedings were necessarily instituted for his arrest and custody, and they resulted in his imprisonment there for such purpose and were sustained on review taken and had in the latter province. Afterwards the relator, as such district attorney, made through the governor of the state of New York application to the

executive department of the United States for extradition of Cadby, pursuant to the treaty of 1842, between the United States and Great Britain.   And upon the requisition of the governor such proceedings were taken by the executive department of the United States that Cadby was removed from the dominion of Canada to the jail of Columbia county. The purpose of this proceeding was to require the board of supervisors of that county to pass upon, audit, allow and provide for the payment as a county charge of the relator's claim, or so much of it as should be found due him for the expenses incurred and paid by him for the purpose before mentioned in Canada, including his necessary expenses incurred and paid by him while so engaged there, it appearing that such board had refused to audit or allow his bill for such expenses or any portion of it.

Further facts are stated in the opinion.

*Levi F. Longley* for appellant.

*Albert Hoysradt* for respondent.

Bradley, J.   The matters stated in the alternative writ, so far as they purport to be of fact, must, for the purpose of this review, be taken as true.   The question is whether or not his official relation to Columbia county of district attorney enabled the relator legitimately to charge the county with expenses incurred and paid by him in the dominion of Canada in the proceedings taken there, with a view to extradition of the person who had committed an extraditable offense in such county and fled to that dominion.   The expenses in question were for that purpose wholly incurred prior to the time of making application through the governor to the president of the United States with a view to such proceedings, pursuant to the treaty with Great Britain, as were necessary to place the fugitive from justice within the jurisdiction of the courts of the county in which the crime had been committed.   Proceedings taken and had for that pur-

pose would necessarily be attended with some expense. This, as between the contracting parties to the treaty, would have to be assumed by the one seeking the mandate, as appears by the provision of the treaty of 1842, that "the expense of such apprehension and delivery shall be borne and defrayed by the party who makes the requisition and receives the fugitive." Such party in this instance was the United States. It is unnecessary to refer specifically to the regulations on the subject of extradition. The application for such purpose is from the district attorney of the county in which the offense has been committed to the governor of the state, and by the governor to the president. And pursuant to the regulations of the executive department of the state, it must appear by the application of the district attorney that he is willing that such expense be a charge on his county.

The expenses referred to in the treaty and in the regulations are those which are incurred after application for requisition is made and attend the process of extradition thereupon had of the fugitive. Those do not include the expenses constituting the relator's bill, which embraces only those incurred by him prior and with a view to such application and its result.

The question here, therefore, relates to his powers in his official relation to his county in respect to the prosecution of those charged with the commission of crime there. The theory adopted by the statute of this state is that criminal offenders be tried in the county where the crime is committed, and that the expense of the prosecution be borne by the county. And it is also provided that "it shall be the duty of every district attorney to attend the courts of Oyer and Terminer and Jail Delivery and General Sessions, to be held from time to time, in the county for which he shall have been appointed; and to conduct all prosecutions for crimes and offenses cognizable in such courts." (1 R. S. 383, § 89.) It thus appears that the duty of prosecution for criminal offenses committed in his county is devolved upon the district attorney. And in respect to the expense incurred by county

officers it is provided that "the following shall be deemed county charges : "

(2) All expenses necessarily incurred by the district attorney in criminal cases arising within the county.

(9) "The moneys necessarily expended by any county officer in executing the duties of his office in cases in which no specific compensation for such services is provided by law."

(15) "The contingent expenses necessarily incurred for the use and benefit of a county." (1 R. S. 385, § 3.)

This statute charges upon a county the expenses and those only which are legitimately incurred for purposes within the powers or duties of those who have some official or representative relation to it.

The district attorney is a county officer and has been such since 1818. (Ch. 383.) Prior to that time and from 1796 (Ch. 8), as assistant attorneys-general and as district attorneys (L. 1801, ch. 146), they were appointed for districts. And their duties were defined in their relation to the districts substantially as they were and have been to the counties for which they were appointed and later have been elected. The fact that the office has become a constitutional one (Art. 10, § 1), adds nothing to the nature and extent of the powers of district attorney. The responsibility is upon him to conduct all prosecutions for crimes triable in his county. It may be assumed that he was charged with the duty of prosecuting Cadby, who had committed a crime there. And for that purpose it would seem that unless the performance of that duty is restricted by some other statute it was, by virtue of that before mentioned, within his power to do that which was essential to such prosecution; and that is a matter necessarily to a great extent dependent upon his judgment. This is so as to all county officers in respect to the subject to which their duties relate. They take as incidental to them such powers as may be deemed necessary to the proper performance of their official duties. (*People* v. *Supervisors of Del. Co.*, 45 N. Y. 196; *People* v. *Supervisors of New York*, 32 id. 473;

*Neary* v. *Robinson*, 98 id. 81; *Van Hoevenbergh* v. *Hasbrouck*, 45 Barb. 197.)

The offending party had fled from Columbia county, beyond the reach of any process the district attorney could issue, and had sought refuge in the country where his pursuit was permitted, and means were provided by international treaty for the surrender of the fugitive to the authorities of the state and county in which he could be brought to trial. The district attorney has not failed to take proceedings to cause the arrest of Cadby, but it is urged that it was not within his power as such officer to go into Canada for the purpose and charge the county with the expenses by him in that manner incurred. It was his duty to conduct prosecutions for crimes committed in his county, and expenses necessarily incurred by him in criminal cases arising therein, were county charges. This duty to conduct prosecutions may fairly be construed to embrace whatever is properly essential to bring a criminal to trial as well as the proceedings of the trial. It may here be assumed that he acted in good faith, and that in his judgment it was necessary to the successful prosecution of Cadby to proceed with the diligence and as he did to effect his arrest and custody for the purposes of extradition. It was not essential to such arrest and custody that proceedings should first have been taken under the treaty by requisition and mandate. The purpose was by such preliminary action to subject the fugitive to the process of extradition to follow pursuant to the treaty. As no such condition precedent was by it made necessary none such was required in practice. (Spear on Extradition [3d ed.], 241 ; 1 Moore, id. § 235 ; *In re Thomas*, 12 Blatch. 370; *Castro* v. *De Uriarte*, 16 Fed. Rep. 93 ; *In re Herres*, 33 id. 165.)

There is no statute in terms charging the district attorney with the duty of going from the state to seek the arrest of a fugitive from justice who has committed a crime within his county. But the general provisions of such section 89 of the Revised Statutes may fairly be construed as giving that officer the power to do that which may be reasonably neces-

sary to the prosecution of persons chargeable with criminal offenses arising and triable in his county; and for that purpose he may use such means as the law permits to bring them within the jurisdiction of the court. The presence of Cadby was necessary to his trial for the felony with which he was charged. The way was open by force of the treaty to his arrest in Canada with a view to his removal into such jurisdiction upon the proper requisition being made. It is true that after the issue of the mandate he may, if then found, have been arrested and proceedings had to subject the fugitive to extradition, but certainly the execution of the mandate for that purpose was rendered effectual by his previous arrest and custody, and in the judgment of the district attorney the delay which would have been occasioned by the requisite proceedings to produce its issuance may have lessened the opportunity to extradite the person charged with the offense, who, it seems, sought to escape the diligent efforts for his commitment that were made for that purpose. While these are considerations which do not go to the question of power of the district attorney, they do relate to the propriety of the exercise of such as he did in that respect, and may have furnished a reason for not requiring as a prerequisite to the arrest and commitment, the requisition and proceedings founded upon it. The district attorney of Columbia county was the public prosecutor of criminal cases arising within that county, and the only officer charged with such duty. But he had no official relation with the province of Canada in respect to the proceedings taken there; such relation was with his county only, and he assumed to represent it in incurring the expenses necessary in those provinces to the purpose for which he went there. The question arises whether he, as such officer, in his relation to the county, could charge it with the necessary expense of the means employed to accomplish such purpose. To do so the employment of such means must be regarded as his official act, and his personal expenses must likewise have been incurred in pursuit of a legitimate object within his official power. All of those expenses arose

in aid of the prosecution of the fugitive and to bring him to trial in the county where the case arose. This he is authorized by the statute to conduct, and by it, as we have seen, all expenses necessarily incurred by such officer in criminal cases arising in his county are deemed county charges. A criminal case arises when the offense is committed, and duties of the district attorney prior to indictment are not limited to issuing subpœnas for witnesses and attending upon the grand jury. The whole subject of inquiry into the commission of crimes in his county is properly within the official duty with which he is charged. And when he is advised that a criminal offense has been committed there, the duty to prosecute the offender is with him, and it is within his power to use such means as are legitimate and necessary for the purpose. The power well recognized of district attorneys is to incur the expense of special compensation necessary to employ the service of experts to prepare themselves by investigation, in cases requiring it, to testify as witnesses upon the trials of persons charged with crimes. This is in aid of the prosecution of the alleged offender, and so is the expense incurred for the purpose of having him brought within the jurisdiction of the court which can take cognizance of the offense.

It is, however, urged on the part of the defendant that in cases where the right of requisition is by comity recognized, claims like that presented by the relator come within the prohibition of the statute which provides that " an officer of this state who asks or receives any fee or compensation of any kind for any service rendered, or expense incurred in procuring from the governor of this state a demand upon the executive authority of a state or territory of the United States, or of any foreign government, for the surrender of any fugitive from justice, or for any service rendered or expense incurred in procuring the surrender of such fugitive, or of conveying him to this state, or for detaining him therein except upon an employment by the governor of this state, is guilty of a misdemeanor." (Penal Code, § 51.) The purpose of this statute evidently was to prevent abuses by officers of

the state in seeking requisitions from the governor and in extradition proceedings instituted by it. And so far as relates to procuring from the governor a demand upon other executive authority for the surrender of fugitives from justice, it legitimately has reference only to interstate extradition, as the governor can have no power under an international treaty to make demand upon a foreign government for the surrender of such fugitive. Such treaty is necessary between the United States and the other government (U. S. Const. art. 2, § 2, sub. 2), as no state of the Union has any power to enter into it as a contracting party. (Id. art. 1, § 10.) And any statute of the state which should purport to invest its governor with power to control the surrender of fugitives from foreign countries with which such treaty existed would for the purpose be ineffectual. (*People ex rel. Barlow* v. *Curtis*, 50 N. Y. 321; *United States* v. *Rauscher*, 119 U. S. 407.)

The expenses in question could not have been incurred in proceedings founded on demand of the governor upon any other executive power or authority, nor were they in fact incurred in any proceeding instituted by requisition through which only the fugitive could be surrendered and conveyed to this state for detention therein, but were incurred before then and in contemplation of it. And, therefore, the action of the district attorney and the expenses so incurred by him do not necessarily come within the abuses which this section of the Penal Code was intended to prevent. By an early statute, provision was made for the payment by the state of the expenses of extradition proceedings founded upon the demand of the governor. (2 R. S. 748, § 45.) And by the Code of Criminal Procedure, as passed in 1881, it was provided that "When the governor shall demand from the executive authority of a state or territory of the United States, the surrender to the authorities of this state of a fugitive from justice, the accounts of the persons employed by him for that purpose must be paid out of the state treasury" (§ 836); and that "No compensation, fee or reward of any kind can be paid to or received by a public officer of this state for a serv-

ice rendered or expense incurred in procuring from the governor the demand mentioned in the last section, or the surrender of the fugitive, or for conveying him to this state, or detaining him therein." (Id. § 837.) By the repeal of those provisions and the substitution of those of section 51 of the Penal Code, the inhibition in respect to incurring expense seems still to be confined to cases in which demand for surrender of the fugitive may be and is made by the governor, and to expenses incurred in the proceeding in that manner instituted. If it is sound policy to limit in that respect the powers of the prosecuting officers of counties, that may be done by legislation, so that the custody or commitment of fugitives from justice, whose surrender is dependent upon international extradition, may be sought by official direction or authority only after the mandate is obtained from the government upon which the demand is made.

We think it is not so under the present statutes, and although the power of such officer may be abused in so far that expenses may be immoderately and perhaps unreasonably incurred, that would be imputable to his want of sound judgment, or failure to properly exercise it in the particular case, and whether or not they are unnecessarily incurred in the exercise of his power would be a matter for inquiry by the body called upon to allow them and provide for their payment. In the present case that question does not arise on this review further than it has relation to the general purpose he had in view in what he did and caused to be done in the premises. Further than that the subject, so far as it relates to the details of the relator's account, will be submitted to the consideration of the defendant as auditing board. In the view taken of this case, we have not failed to observe the able argument of the defendant's counsel. That is founded upon the contention forcibly urged that it was not within the power of the district attorney to cause or direct the arrest of the fugitive in the foreign jurisdiction, and, therefore, the expenses arising from action taken in that behalf at his instance cannot be made the subject of charge against his

county. While it must be conceded that he has only such powers as are conferred upon him by statute and such as are essentially incident to the powers so expressed, we think the provisions before mentioned of the Revised Statutes embrace within those given the power from the exercise of which the alleged claim of the relator for expenses arose.

The conclusion follows that the judgment should be affirmed.

All concur, except Landon, J., not sitting.

Judgment affirmed.