PEOPLE ex rel. TRIPP et al. v. BOARD OF SUP'RS OF CAYUGA COUNTY.

(Supreme Court, Special Term, Monroe County. February, 1898.)

1. COUNTIES—EXPENSES INCURRED BY DISTRICT ATTORNEY—LIABILITY.

1 Rev. St. (Birdseye's Ed.) p. 784, provides that all expenses necessarily incurred by the district attorney in criminal actions shall be a county charge, and that the money necessarily expended by any county officer in the duties of his office, where specific compensation is provided, shall be a county charge. A district attorney, anticipating that in a murder trial the defense of suicide induced by insanity would be made, engaged, without fraud, the services of eight experts of high standing, at $50 and expenses each per day while attending court and making experiments. *Held*, that the contract was authorized, and the county liable thereon.

2. SAME—APPROVAL BY COUNTY BOARD.

A board of supervisors, by auditing a portion of bills for expenses incurred by a county officer, thereby concedes their necessity, and gives the officer's

act incurring the same the effect of being made with the board's prior authority.

3. MANDAMUS—DEMAND AND REFUSAL.

A petition for a writ of mandamus against a board of supervisors not showing a demand for performance of the act and a refusal by the board will be denied.

Application by the people, on the relation of John D. Tripp and others, against the board of supervisors of Cayuga county for a peremptory writ of mandamus. Denied.

John D. Teller and James Lyon, for relators.

Edwin S. Day and H. Greenfield, for defendants.

DAVY, J. This is an application for a peremptory writ of mandamus requiring the board of supervisors of Cayuga county to assemble and audit the relators' bills for services as expert witnesses for the people on the trial of Frank N. Sheldon for the murder of his wife. It appears from the affidavits read on this motion that the district attorney entered into a contract with the relators, eight in number, agreeing to pay them each $50 for each day's attendance at court during said trial, and $50 for each day in New York making experiments at Bellevue Hospital, and also a reasonable compensation for other services in connection with said case, and all disbursements. The aggregate amount of the relators' bills was $5,806. The board refused to allow the claimants $50 a day for each day's service on the ground that the amount was unreasonable and exorbitant, and only allowed them $25 per day.

The principal question raised upon this motion is whether the district attorney in his official capacity had power, under the statute, to employ expert witnesses in the Sheldon trial, and whether the expenses incurred therefor are a county charge. The statute provides that "all expenses necessarily incurred by the district attorney in criminal actions or proceedings arising in his county shall be a county charge." The statute also provides that "the moneys necessarily expended by any county officer in executing the duties of his office in cases in which no specific compensation is provided by law, shall be a county charge." 1 Rev. St. (Birdseye's Ed.) p. 784. The duty and responsibility rests upon the district attorney to prosecute those who have been indicted by the grand jury for crimes committed and triable in his county. He was therefore charged with the duty of prosecuting Sheldon, who had been indicted for the crime of murder in the first degree in killing his wife by shooting her at their home in the town of Brutus.

The district attorney states in his affidavit that, sometime prior to the commencement of the trial, he learned that the theory of the defense was that she came to her death by her own act while suffering from mental derangement, and that a large number of expert witnesses would be called by the defendant on the trial to establish her insanity; that upon learning these facts he considered it necessary to secure the assistance of medical experts to consult and advise with in the preparation of the case, and to attend and testify upon the trial; that he interviewed each of the claimants

50 N.Y.S.—2

with a view of obtaining their services, and he was informed by each of them that they would not consent to be witnesses upon the trial unless they were each paid $50 a day for each day's attendance at court, and for each day in making experiments at Bellevue Hospital, and also a reasonable compensation for other services that they might be required to render in the case; that he took the matter of such contract under consideration, and consulted with Mr. Frank D. Wright, who was associated with him as counsel in the case, and also with some of the judges of the courts and several members of the bar, as to the propriety of making such a contract; that after such consultation he concluded to make the proposed agreement. It was the duty of the district attorney, acting in the line of his duty as a public prosecutor, to secure the assistance of skilled expert witnesses of high standing in the community to meet the professional experts which the prisoner intended to call on his side. The accused was charged with having perpetrated a horrible crime, which caused intense feeling and excitement in the community. The question whether she came to her death by her own act, while suffering from mental derangement, was one in respect to which the opinion of medical men would be likely to exert a weighty, if not controlling, influence with the jury. It is evident that, if the district attorney had not taken the necessary steps to secure the attendance of competent experts of high standing as witnesses, he might have been censured as having been derelict in his duty to the people of the county as a prosecuting officer. In a case of such magnitude and interest as this, it would be expected that the district attorney would procure the highest professional skill that he could command. It is a well known fact that expert witnesses are usually paid extra compensation for their services when called in important cases, especially in homicide cases, and the question as to what amount they shall receive is usually regulated by contract. They cannot be required or compelled, if subpœnaed, to examine the case and given an opinion on a question of science. It is customary, and frequently necessary, for expert witnesses to attend during the whole trial, and hear and carefully consider all the testimony given on both sides, in order to fully qualify them to give a deliberate and intelligent opinion.

The district attorney also states in his affidavit that Sheldon is a member of a very large and influential family; that his brother at the time of the homicide represented one of the assembly districts of Cayuga county in the legislature; and that great influence was brought to bear on the part of his relatives and friends to secure his acquittal. It is plain to be seen, therefore, that there was resting upon the district attorney a great weight of responsibility. Every circumstance connected with the prosecution was watched by the keen eyes of the people. He knew that, if the accused was acquitted through any mistake on his part in the management of the case, he would be severely censured by the public. I am inclined to think that, if ever there was a case which required the district attorney to be vigilant in the discharge of the great duty imposed upon him, this was one. The statute clearly invested him with a

discretion to decide as to the necessity of employing expert witnesses and the number required. The limitation is confined to necessary expenses. Counties and municipalities, like natural persons, are bound by the acts and contracts of their agents done and made within the scope of their authority. Ang. & A. Corp. 288–301; Alexander v. Cauldwell, 83 N. Y. 485.

It seems to me, judging from all the facts in this case, that it was not only necessary but it was the duty of the district attorney to employ competent expert witnesses, and, if necessary, to enter into an agreement to pay them a specified sum for their services. The services were performed on the faith of the official obligation of the district attorney to pay them $50 a day during the trial. The rule is that, in the absence of fraud or collusion, the acts of a public officer acting on behalf of a county, within the limits of the authority conferred upon him by statute, and in the performance of his duty in dealing with third persons, are the acts of the county, and cannot be repudiated by it. No different rule prevails in respect to this class of contracts than those made between private individuals. Baird v. Mayor, etc., of New York, 96 N. Y. 592; Kingsley v. City of Brooklyn, 78 N. Y. 215. It was his duty to do that which a faithful and vigilant district attorney would be expected to do, considering the magnitude and importance of the case, and that which was essential and necessary to the faithful performance of his official duty. Whether the expenses were unnecessarily incurred by the district attorney in the prosecution of Sheldon, and the number of days that the experts were employed, are questions that the board of supervisors may inquire into; but they have no right to refuse to audit the claims, unless they were unnecessarily incurred. The expenditures are to be deemed necessary, within the plain meaning and intent of the statute, having in view what is due to the public at the time the contract was made, and the efficient and faithful discharge of public duty.

The district attorney is the agent of the county, so far as his authority by statute extends, in the expenditure of money in the trial of criminal cases. Where, from the necessity of the case, the law is obliged to trust to the sound judgment and discretion of an officer as to the propriety, legality, or practicability of the performance of an act and its manner of execution, the duty is of a judicial character, and the officer is only required faithfully to act, according as things shall appear to him to the best of his ability. The liability of the county rests upon the ground that the expenses and disbursements were legitimately and necessarily incurred, and that the contract was made in good faith. Under such circumstances, it will not constitute a valid objection to the claims that the expenses or disbursements were not as reasonable as they ought to have been. If the district attorney acted in good faith, and according to the usual and ordinary course, in prosecuting parties for the crime of murder, where the plea of insanity is interposed, the county must be held liable for the amount of these services, based upon the amount agreed upon by contract.

In Flagg v. Inhabitants of Millbury, 4 Cush. 243, Wild, J., in speaking for the court, says:

"By the word 'necessity' in the exception we are not to understand a physical and absolute necessity, but a moral fitness or propriety of the work and the labor done, under the circumstances of any particular case, may be deemed necessity within the statute." Morris v. State, 31 Ind. 190.

Cases may arise of such magnitude and importance as to justify the district attorney in incurring expenses beyond what are ordinarily incurred in the trial of ordinary cases. That occurred in the case of People v. Montgomery, 13 Abb. Prac. (N. S.) 207, who was indicted for killing his wife. The plea of insanity was interposed in that case, and nearly all the prominent professional experts in Western New York were retained by the defendant. The district attorney of Monroe county, after consulting Mr. Justice Dwight and the justices of the court of sessions and others, entered into an agreement with Dr. Hammond of New York to come to Rochester, and attend the trial as an expert witness for the people, which occupied his time for about two whole days, for which the county paid him the sum of $500. Upon motion for a new trial, the court held that it was proper for the district attorney to procure the attendance of skilled witnesses in appropriate cases, for a special compensation, at the expense of the county.

It was held in People v. Board of Sup'rs of Cortland Co. (Sup.) 15 N. Y. Supp. 748, that "the district attorney has power to hire a physician to attend the trial as consulting expert and as a witness, and to make a contract for a specific compensation to be paid for such services; and, where a board of supervisors refuses to audit such claims, they may be compelled by mandamus to do so."

In People v. Haws, 12 Abb. Prac. 199, the court said:

"The district attorney is a county officer, and in the performance of his general duties acts as a county officer, and the Revised Statutes provide that the moneys necessarily expended by any county officer in executing the duties of his office and the contingent expenses necessarily incurred for the benefit of a county shall be deemed a county charge."

In People v. Supervisors of Delaware Co., 45 N. Y. 199, the relator was, during the years 1859–1868, attorney for the board of excise of the county of Delaware. He presented to the board of supervisors of that county his bill for legal services rendered as attorney to the excise board, including services in two suits. The supervisors offered him $300 if he would release the county from all claims for costs and disbursements in the suits conducted by him. This proposition the relator declined, and applied for a peremptory mandamus. On service of the mandamus, the supervisors disallowed all charges for disbursements and services made and rendered in subpoenaing and procuring attendance of witnesses, other than statutory fees, and also other claims. Folger, J., in writing the opinion of the court, says:

"We have no doubt but that the board of commissioners of excise had the power to employ an attorney and counselor at law to conduct for them legal business and to give them advice, from time to time, as they should need it. The act by which they are created imposes upon them the duty, when cases arise, of commencing and prosecuting legal proceedings; and, as the board is the

agent of their county in the matters confided to them, when acting for it therein their contracts, express or implied, within the scope of their authority, for legal services, are binding upon the county."

The case of Neary v. Robinson, 98 N. Y. 81, was an action brought in the justice's court against the superintendent of the poor of St. Lawrence county to recover for services rendered upon their employment by the plaintiff's attorney in bastardy proceedings instituted by them. Judge Finch, in speaking for the court, said:

"The superintendent may properly employ professional assistance in conducting the proceedings. They become responsible as employers upon a contract which they are authorized to make, and whatever expenses they thus incur is made a county charge and subject to audit by the board of supervisors. The statute determines what are to be deemed county charges, and among them is specified the moneys necessarily expended by any county officer in performing the duties of his office, in cases in which no specific compensation for such services is provided by law."

In People v. Board of Sup'rs, 32 N. Y. 473, the case arose upon an application for a mandamus to compel the board of supervisors to audit the account of the relator for sheriff's fees, amounting to $18,210.61, paid by the district attorney of the city and county of New York in suits for penalties which he was required to prosecute under the metropolitan police act. The court says:

"The import of the words 'necessarily expended' is sufficiently evident when we consider the purpose for which they were inserted and the nature of the subject to which they are applied. They relate, not to the necessity of payment as between the officer and the party to whom it is made, but to the necessity of the expenditures, having reference to what is due to the public and the law in the efficient and faithful discharge of official duty."

Judge Bradley, in expressing the unanimous opinion of the court in People v. Supervisors, 134 N. Y. 8, 31 N. E. 325, says:

"The power, well recognized, of district attorneys, is to incur the expense of special compensation necessary to employ the services of experts, to prepare themselves by investigation, in cases requiring it, to testify as witnesses upon the trials of persons charged with crimes."

In speaking of the power of the district attorney to incur expenses, the learned judge says:

"Although the power of such officer may be abused in so far that expenses may be immoderately, and perhaps unreasonably, incurred, that would be imputable to his want of sound judgment, or a failure to properly exercise it in the particular case, and whether or not they are unnecessarily incurred, in the exercise of his power, would be a matter for inquiry by the body called upon to allow them and provide for their payment. That the expenses necessarily incurred by the district attorney in the performance of his duty embrace whatever is essential to bring a criminal to trial, as well as the proceedings on trial; and, if the accused is in a foreign jurisdiction, it includes expenses incurred in procuring his arrest and custody for the purpose of extradition, in order that he may be brought within the jurisdiction of the court." Tompkins v. City of New York, 14 App. Div. 536, 43 N. Y. Supp. 878; People v. Supervisors of Cortland Co., 58 Barb. 139.

The affidavits show that the relators presented their bills to the board of supervisors at its last annual session, which were referred to the proper committees; that counsel for the respective claimants appeared before the board, and urged that the claims be referred to a special committee, which request was refused. It was then determined that the matter should be heard in open board, and Sat-

urday, December 11th, was the day set for the hearing on said claims. Owing to the engagements of counsel for the claimants, the hearing was from time to time postponed, until the 17th of December, when one of the counsel for the claimants appeared before the board and asked for a further adjournment, which the board refused to grant. Thereupon said counsel asked leave to withdraw the claims from the consideration of the board, which leave was unanimously granted by the board. Thereafter, and on December 18th, the reports of the committees having charge of said bills were adopted by the board, and the claims were audited, but at a reduction of one-half. The affidavits also show that the claims were referred to a committee, but it does not appear that the committee or the board of supervisors summoned the district attorney or the relators or any other witnesses before them for an examination and inquiry as to the necessity and validity of the relators' accounts, which, under the statute, they had a right to do. The statute permits the board of supervisors to summon and examine witnesses, and to summon any county officer, in any matter within the jurisdiction of the board. 3 Rev. St. (Birdseye's Ed.) p. 2861. They did not report that any of the statements contained in the affidavit of the claimants were false; neither did they question the right of the district attorney to employ the relators as expert witnesses; neither did they impute any bad faith on his part in making the contract. They simply reported that they had examined the claims, and that the alleged contract was unreasonable, and the price stipulated therein was exorbitant, and the amount mentioned in said bills was unnecessary, except as allowed. The board, by auditing a portion of the relators' bills, conceded the necessity of having expert witnesses on the trial, and such ratification gives to the act the same effect as if it were previously and duly authorized by the board. This rule applies to corporations as well as to individuals. Peterson v. Mayor, etc., of New York, 17 N. Y. 449. I am inclined to think that the board exceeded its authority when it audited the relators' bills after they had been withdrawn from its consideration. Assuming, therefore, for the purpose of this application, that the accounts were illegally audited, the difficulty is that the relators are not in a position to entitle them to a peremptory writ of mandamus, for the reason that no request has been made to the board to audit the accounts since they were withdrawn. The rule is that a writ will not be granted to compel the board of supervisors or any other corporate body to do an act which it has never been asked to do. The petition should show a demand for performance of the act and a refusal by the board. People v. Village of Hyde Park, 117 Ill. 462, 6 N. E. 33; People v. Whittemore, 4 Mich. 27; 14 Am. & Eng. Enc. Law, 167. It would be idle, therefore, to issue a peremptory writ commanding the board to assemble and act upon the relators' accounts, when they are not before it for consideration.

The motion, therefore, for a peremptory writ of mandamus must be denied, with $10 costs to the defendants.