PEOPLE ex rel. HAMILTON v. BOARD OF SUP'RS OF JEFFERSON COUNTY.

(Supreme Court, Appellate Division, Fourth Department. December 9, 1898.)

1. DISTRICT ATTORNEY—PROCUREMENT OF EXPERT WITNESSES—LIABILITY OF COUNTY.
   Though a district attorney may engage, when necessary, at the county's expense, an expert witness in a criminal case, under Laws 1892, c. 686, § 230, subd. 2, he can bind the county to pay only what is just and reasonable therefor.

2. COUNTIES—AUDIT OF CLAIMS—PROVINCE OF SUPERVISORS.
   Under Laws 1892, c. 686, § 12, subd. 2, conferring power on the supervisors to annually audit all accounts and charges against the county, it is their province to determine what compensation should be paid an expert witness necessarily engaged by the district attorney in a criminal case, as authorized by section 230, subd. 2.

3. SAME—EVIDENCE.
   On the hearing, before the board of supervisors, of a claim against a county based on an express contract for services, the claimant tendered evidence outside of the contract as to the value of his services. Held, that the county was entitled to meet by similar evidence the issue thus raised.

Certiorari by the people, on the relation of Albert H. Hamilton, against the board of supervisors of Jefferson county, to review its proceedings in auditing a claim made by the relator against the county.    Writ quashed.

On the night of April 15, 1897, two women were murdered at or near Sack-ett's Harbor, in the county of Jefferson, under circumstances which surrounded the occurrence with no little mystery.    A soldier of the United States army by the name of Haynes, alias Allen, was charged with the commission of the deed, but he protested his innocence, and insisted that the guilty party was the husband of one of the women, who had been separated from his wife by a decree of the court.    Haynes, however, was indicted for the crime, and the district attorney employed the relator to make certain tests of a micro-scopical and chemical nature, and to testify as an expert witness upon the trial of the indictment.    The trial was an exciting one, lasting several weeks, during the greater portion of which time the relator was in attendance at court, and he was actually upon the stand as a witness on 12 different days. Haynes was finally convicted of murder in the second degree, and upon the conclusion of the trial the relator presented his claim to the defendant, amounting in the aggregate to $2,850, for services rendered, and demanded payment thereof.    He also presented a separate bill for the expenses incurred by him, and this bill was allowed and paid.    The claim for services was referred by the board of supervisors to a committee, before which a hearing was had, witnesses being produced and sworn on behalf of both the relator and the defendant.    Subsequently the committee made a report to the full board, recommending a reduction of the claim to $1,200.    This report was approved, the claim was audited at the sum named, and the clerk of the board was directed to mail to the relator an order upon the county treasurer for the amount allowed, which he did; but the relator declined to accept the same, and thereupon applied for and obtained the writ in pursuance of which this review is invoked.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and WARD, JJ.

Henry Purcell, for relator.
Watson M. Rogers, for defendant.

ADAMS, J.    Among certain items which are defined by the stat-ute to be a county charge are "all expenses necessarily incurred by the district attorney in criminal actions or proceedings arising in his county."    Laws 1892, c. 686, § 230, subd. 2.    This provision was obviously designed to invest the prosecuting attorney of each county with certain discretionary powers, by the reasonable and proper exercise of which he might obtain the necessary evidence with which to secure the arrest and conviction of parties charged with a violation of the law.    That such a provision is both wise and just will hardly be questioned, for any one who is at all con-versant with the difficulties which surround the administration of criminal justice knows that exigencies frequently arise when the prosecuting officer is called upon to act promptly, and to take such action as requires the expenditure of considerable sums of money.    In such cases the law does not require that he should wait until the board of supervisors can be convened in order to place the necessary funds at his disposal, but permits him to exer-cise his own judgment in the matter, upon the assumption that whatever expense he incurs in the performance of his official duty

will be both reasonable and necessary. In a recent case it was held that the expense attending a trip by the district attorney to Canada, and the institution there of extradition proceedings to procure the return of a prisoner to this state, was a proper and lawful charge against the county where the indictment was found. People v. Board of Sup'rs, 134 N. Y. 1, 31 N. E. 322. And in a still later case the statute above cited was held to embrace within its terms the expense necessarily incurred by a district attorney in procuring the attendance of medical experts at the trial of an indictment for murder. People v. Board of Sup'rs, 22 Misc. Rep. 616, 50 N. Y. Supp. 16.

These, and other similar cases which might be cited, make it perfectly clear that, in employing the relator to render such services as would ordinarily be expected of an expert witness under like circumstances, the district attorney of Jefferson county did not exceed the authority which the law conferred upon him, and, having this authority, we think it was also competent for him to bind the county to pay for the services thus rendered such a sum as would be just and reasonable; but what is reasonable compensation for services of this character necessarily depends to a great extent upon the facts of each particular case. In the present instance it is claimed by the relator that he exacted from the district attorney as a condition of his rendering any service whatever that he should be compensated therefor at certain stipulated rates; but this contention is not altogether sustained by the evidence of the district attorney, who testifies that he told the relator that he "should be paid, and liberally paid," and that ultimately they would enter into a written contract fixing the rate of compensation if he (the district attorney) found he had authority to make such a contract. Subsequently, and some three months after his retainer, the relator caused a contract to be drawn up, and the same was thereupon executed by the district attorney, and it is now insisted that this contract is conclusive upon the defendant, although it was not in fact executed until after a considerable portion of the services charged for had been rendered.

We have said that, in our opinion, it is competent, in a case of this character, for a district attorney to obligate his county to pay for the services of an expert witness, where, in the exercise of his judgment, he deemed it necessary to employ one; and, as we have seen, this is a power which is conferred by statute, but it is nevertheless a power which has its limitations, and it certainly is one which cannot be exercised arbitrarily or capriciously. It follows, therefore, that there must be somewhere a tribunal vested with authority to determine what these limitations may be. In our endeavor to discover this vis major, we turn once more to the statute already cited, and find that among the powers conferred upon the board of supervisors is that of annually auditing all accounts and charges against the county. Laws 1892, c. 686, § 12, subd. 2. The verb "audit," as here used, means simply to examine,—to adjust; and it clearly implies the exercise of judicial discretion. 3 Am. & Eng. Enc. Law (2d Ed.) p. 513; Morris v. People,

3 Denio, 381–391; In re Murphy, 24 Hun, 592, affirmed 86 N. Y. 627. And not only does an auditing board possess discretionary and judicial power, but its jurisdiction over claims which are properly submitted to it is original, and its decision thereon is conclusive until modified or reversed by another court in the manner prescribed by law; that is, in proceedings by certiorari. People v. Barnes, 114 N. Y. 317, 20 N. E. 609, and 21 N. E. 739. It follows, therefore, that although the relator's claim, arising, as it clearly does, out of an employment authorized by statute, is a charge against the county of Jefferson, it is one nevertheless which is subject to the adjudication of the auditing board of that county, which is the defendant in this proceeding.

It only remains, then, to determine whether or not the defendant was justified by the evidence produced upon the hearing in reducing the relator's claim from $2,850 to $1,200; and, in considering this question, the fact that a contract was entered into between the district attorney and the relator is one to which, for two reasons, we do not attach much importance. In the first place, upon the hearing, the relator, by tendering evidence outside of the contract as to the value of his services, raised an issue which the defendant was entitled to meet by similar evidence. Scattergood v. Wood, 79 N. Y. 263; Frear v. Sweet, 118 N. Y. 454, 23 N. E. 910. But, even were this not the case, the district attorney was, as has already been suggested, powerless to bind the county of Jefferson to pay the relator for his services a sum which was extravagant and unreasonable. So far as this particular feature of the case is concerned, we do not deem it necessary to analyze, or even to refer with any particularity to, the evidence contained in the record before us; for it is impossible to read that evidence without reaching the conclusion that, while the relator undoubtedly rendered services which were of great value to the district attorney in his effort to discover and convict the perpetrator of a heinous crime, the value which he has seen fit to place upon those services appeared to the defendant, after a full and fair trial, to be both exorbitant and unreasonable, and, as there was ample evidence given by several witnesses to sustain this view, we are not inclined to say that the defendant was not justified in taking the action it did. Indeed, after a careful examination of the case, we are satisfied that, under all the circumstances, the amount at which the relator's claim was audited was just, proper, and liberal.

The writ, therefore, should be quashed, with $50 costs and disbursements to the defendant. All concur.