PEOPLE ex rel. MANLEY v. BOARD OF SUP'RS OF CHENANGO COUNTY.

(Supreme Court, Appellate Division, Third Department. December 28, 1911.)

1. COUNTIES (§ 139*)—COUNTY EXPENSES—CRIMINAL PROSECUTIONS—EXPERT WITNESS FEES.

Under County Law (Consol. Laws 1909, c. 11) § 240, providing that all expenses incurred by the district attorney in criminal actions are county charges, a district attorney can bind his county for a reasonable sum for the services of an expert witness in a criminal trial, and, while the allowance of such sum is subject to review and audit by the board of supervisors, the board is bound to allow a reasonable sum.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 203–207; Dec. Dig. § 139.*]

2. COUNTIES (§ 139*)—OBLIGATION OF COUNTIES—FEES FOR EXPERT WITNESSES.

Where the district attorney bound his county to pay a reasonable sum for the services of an expert witness, the county board of supervisors is bound to allow at least the customary minimum charge for such services.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 203–207; Dec. Dig. § 139.*]

3. COUNTIES (§ 139*)—OBLIGATIONS OF COUNTIES—FEES TO EXPERT WITNESSES—ALLOWANCE OF OTHER FEES.

The right of an expert witness for the state to a reasonable compensation from the county board of supervisors is not affected because the board of supervisors allowed claims for other services, for it must be presumed that those allowances were for the precise services for which the bills were presented.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 139.*]

4. WITNESSES (§ 28*)—EXPERT WITNESSES—FEES.

A physician, testifying as an expert witness, is entitled to reasonable compensation, instead of the ordinary witness fees.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 65, 66; Dec. Dig. § 28.*]

Betts, J., dissenting.

Petition by the People, on the relation of Thomas F. Manley, for writ of certiorari to the Board of Supervisors of Chenango County. Writ issued, and determination of board annulled.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

Henry R. Follett, for relator.
James P. Hill, for defendant.

HOUGHTON, J.  The relator is a physician and surgeon, and one White having been indicted by the grand jury of Chenango county for murder in the second degree, and his trial being about to be moved, the district attorney of that county consulted with and employed the relator as an expert witness thereon.  No specific per diem compensation was agreed upon, but it is shown by the affidavits of relator and others that the district attorney said he would see that the relator had his pay.  The district attorney says that he cannot state exactly what was said, but in substance it was that he would endeavor to have the board allow a reasonable amount for such services.  Although a considerably larger sum was mentioned, the relator made out a claim against the county for $10 per day for three days' services, and the district attorney indorsed thereon.  "Dr. Manley attended the case as charged, and his bill would seem proper," signing the same.  This bill was regularly presented to the board, and it was allowed at the sum of $15 after the board had consulted with the district attorney concerning it.

[1]  The district attorney had the power to obligate his county to pay a reasonable sum for the services of an expert witness in the criminal trial about to be had.  County Law (Consol. Laws 1909, c. 11) § 240; Laws 1909, c. 16; People ex rel. Hamilton v. Supervisors, 35 App. Div. 239, 54 N. Y. Supp. 782.  While his agreement was subject to review and audit as to amount by the board of supervisors, which would not be bound by any specific sum which he had agreed to pay, the county was compelled to recognize his agreement to pay the relator for his services as an expert witness, and bound to audit a reasonable sum therefor.

[2]  The only proof appearing in the record is that $10 per day for such services was the minimum charge prevailing at the time in the county of Chenango, and the record discloses that that amount was allowed to other physicians in the same case.  The board allowed only $5 per day, which under the facts appearing was wholly unreasonable.  It is not seriously contended that the relator was not employed as an expert witness.  If he was not employed as an expert, he was entitled to nothing aside from his ordinary fees.  Having been employed as an expert, he should have been allowed at least the minimum rate therefor.

[3]  The fact that other bills were allowed to relator could not affect the bill under consideration.  Those audits must be presumed to have related to the precise services for which the bills were presented, and it is to be assumed that the board of supervisors properly audited them.

[4]  While the amounts demanded by physicians for expert services in criminal matters are often the subject of just criticism, they are entitled to fair and reasonable compensation, and justice would often

miscarry if juries did not have the benefit of their expert testimony. The record shows that the relator was a leading physician in his community, and that $5 per day was not a reasonable compensation for his services in attending upon the trial as an expert.

It follows that the determination of the board of supervisors must be annulled, with $25 costs and disbursements and the matter remitted to them for further audit. All concur, except BETTS, J., dissenting in opinion.

BETTS, J. I dissent. The record here disclosed that Dr. Brooks, for some considerable services in relation to the trial of one White on an indictment for murder in the second degree, was audited and allowed $37.40 by the board of supervisors at different sessions, and it also disclosed that the relator, Dr. Manley, was allowed $52.40 by the same board of supervisors in the same case for what is apparently less services than were rendered by Dr. Brooks. Manley was an older practitioner. The particular service for which this relator brings certiorari was a short time spent in court upon parts of two or at the most three days at the village of Norwich, the village in which the relator resided. The fact that for somewhat the same services the board of supervisors allowed a greater amount to some other party is not conclusive here. In fact, it shows that the board of supervisors were conscientiously endeavoring to do their duty. They were acting as a board of audit, as they were required to act, to use their best endeavors to allow a suitable sum, and only such sum, to the relator as against their county. The district attorney could not and did not attempt to fix what should be allowed to the relator. He said that he would be paid. His bill has been audited.

The fact that the relator, shortly before the trial, attempted to get the district attorney to fix some definite sum which relator would be paid, does not commend him or his bill to the court. I think the courts should not be used for such small purposes as to permit a writ of certiorari to obtain $5 per day for three days, extra compensation for a doctor for small services of the kind rendered here. It was a matter that was peculiarly within the province of the board of supervisors. Chenango county was unfortunate enough to have one of those modern luxuries, a murder trial, which too frequently swells the tax roll of the county in which such a situation arises. It is to be presumed that the supervisors did their duty in the premises, and nothing appears in this record to show that they did not.

I think the action of the board of supervisors should be affirmed, and the writ dismissed, with costs against the relator.