TOMPKINS v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. February 19, 1897.)

1. APPLICATION FOR PARDON—DUTY OF DISTRICT ATTORNEY—EXPENSES—LIABILITY OF COUNTY.

Under Laws 1887, c. 213, authorizing the governor, on application for executive clemency, to designate a person to conduct the hearing and to take testimony, it is the implied duty of the district attorney of the county wherein the conviction was had to attend the hearing in order to present the facts developed at the trial, or any new matter necessary to meet the applicant's case; and the expense of an expert witness employed by him for this purpose is a proper charge against the county.

2. APPEAL—OBJECTIONS NOT RAISED BELOW.

Where defendant city based its motion for nonsuit on the sole ground that the claim sued on was only a charge against the state, the objection that there was no appropriation to meet the expense cannot be urged in the appellate court.

Action by Byron V. Tompkins against the mayor, aldermen, and commonalty of the city of New York to recover for services as an expert witness. The court directed a verdict for plaintiff, subject to the opinion of the appellate division, and plaintiff moves for judgment thereon. Granted.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Louis J. Vorhaus, for plaintiff.

Robert Shaw Barlow, for defendants.

HATCH, J.    In 1887 the legislature passed an act (Laws 1887, c. 213) providing that upon an application made to the governor of the state for executive clemency in a criminal case the governor should have the power to institute an inquiry into the subject-matter appertaining to the application for clemency, and to that end power was given to compel the attendance of any person, and the production of books and papers before him, or the governor could designate a suitable person to conduct the hearing, and require the attendance before such person of a witness, and the production of books and papers, pursuant to a practice which the act prescribed. The person so designated was required to forward to the governor the testimony so taken by him. Carlyle W. Harris had been convicted of murder in the first degree, and sentence of execution had been pronounced upon such conviction. Application for executive clemency was made to the governor in behalf of Harris, and the governor, acting under this statute, designated George W. Raines, who is called in this action a commissioner, to conduct the hearing pursuant thereto. The conviction and sentence of Harris was had in the city and county of New York, and the proceeding upon the application for executive clemency was had in the city of New York. The application for executive clemency was based upon allegations of fact additional to the issues presented upon the trial, and the hearing before the commissioner involved a consideration of questions of medical science, and the examination of expert witnesses in connection therewith. The district attorney of the city and county of New York appeared upon the hearing before the commissioner as the representative of the people, and employed the plaintiff to appear before the commissioner upon the hearing as an expert witness upon the medical question involved. In pursuance of such employment, the plaintiff appeared as a witness, and gave his testimony, and thereafter rendered his bill to the city of New York for such service; and, payment being refused, he brought this action to recover therefor.

There is no dispute of fact in the case, and no claim is made but that the bill is in all respects a moderate and proper charge for the service rendered. Defendant interposes three objections to the granting of this motion: First, that the claim is properly a charge against the state; second, that the district attorney had no power to create a liability for the claim against the defendant; third, that the recovery is barred by the provisions of chapter 410, Laws 1882,

which provides that no expense shall be incurred by any department
or the head thereof, unless an appropriation shall have been made
covering the expense, and no expense shall be incurred in excess of
the amount appropriated for the specified purpose, and, if so ex-
ceeded, no liability shall arise against the city on account thereof.
Section 6 of the act of 1887, supra, reads:

"Any disbursements necessary to be made for any of the purposes mentioned
in this act shall be paid upon the approval of the governor's private secretary,
by the comptroller out of any moneys in the treasury not otherwise appropriated."

The disbursements for which the act prescribes in terms are limit-
ed to the compensation of the person designated to conduct the hear-
ing, and the fees of witnesses subpœnaed to attend, which are made
the same as in civil actions in the supreme court.   But the lan-
guage of the section is quite broad, and embraces any necessary
expense required to carry out the purpose of the act.   It may be
that in a proper case the governor would be authorized to incur such
expense as was incurred in the present case.   We do not find a de-
termination of this question necessarily essential to a disposition of
this case, as we do not think the question presented to us for de-
cision necessarily involves it.   The act makes no provision for and
imposes no duty, in specific terms, upon the district attorney of the
county where the conviction was had, to attend upon the hearing
before the commissioner, or to produce testimony.   But it does
not follow from this fact that no duty rests upon the district attor-
ney to attend upon such hearing.   There is no express provision of
law requiring the district attorney of a county to appear and argue
a case upon appeal, but long and uniform practice has imposed this
requirement as necessarily inhering to the office which he holds.
The law and the public, whom he represents, would justly hold a dis-
trict attorney as derelict in his duty who failed in the performance
of these implied duties, to the same degree as though he violated
a statutory obligation.   Sound public policy requires that public
officials, especially one so important to the public as the prosecuting
officer of a county, should be held to a rigid discharge of those duties
and obligations which naturally and inherently attach to the office
which they hold.   We have no doubt that the law exacts of such
officers the same degree of fidelity in the discharge of such duties
as though the obligations were expressly, instead of impliedly, im-
posed upon them.   This statute, as we have seen, makes no refer-
ence to the district attorney, or provision for his attendance; and yet
we have no doubt that the implied duties of his position imperatively
required his attendance and co-operation in the proceeding, and his
active intervention to the extent of seeing, so far as he was able, that
the truth appear.   By section 695 of the Code of Criminal Procedure,
where an application is made to the governor for a pardon, commu-
tation, or reprieve of a convicted person, it is made the duty of the
district attorney of the county where the conviction was had to sup-
ply the governor, upon his request therefor, with a statement of the
facts proved upon the trial, or, if a trial was not had, the facts ap-
pearing before the grand jury which found the indictment, and of

any other facts having reference to the propriety of granting or refusing such pardon, commutation, or reprieve. This section, in substance, was taken from Laws 1849, c. 310. In England the pardoning power for the most part was exercised upon the recommendation of the judges. But this was for the reason that no power existed in the judges to grant new trials. 1 Bish. Cr. Law, § 924. With us that power exists, but the judges' and prosecuting officers' functions have been limited, where the conviction was proper, to communicating the facts of the case to the pardoning power; and in this regard the Code worked no change in the practice as it formerly existed. It was, therefore, the duty of a prosecuting officer, prior to this provision of the Code, to communicate to the pardoning power the facts of the case in which the application for a pardon had been made. The statute of 1887 was an enlargement of the authority possessed by the governor, but the proceeding is essentially the same as previously existed. It only enlarged the inquiry to meet extraordinary cases, and provided additional machinery for getting at the facts. We think that in this connection it imposed a duty upon the district attorney to meet the change in practice by taking such steps as would fairly apprise the governor of the facts, and that this duty extended to the production of such new matter as existed to meet any changed condition produced by the applicant for clemency. The object of the communication by the district attorney to the governor, stating the facts developed upon the trial, was for the purpose of enabling the governor to obtain a correct view of the facts which led to the conviction. The object of the hearing before the commissioner is to apprise the governor not alone of the facts, but of any change in the facts, which the trial developed, which would make the exercise of the pardoning power proper. To this end, in the present case, it was expected that a new line of inquiry would be opened. It would be violating law to say that no duty devolved upon the district attorney, in this connection, to see that a true case only was made upon such application. The duty of a district attorney does not cease with the conviction of an offender. It is equally his duty to see that the judgment is executed, so far as to complete the proceeding to a point where the person awaits the custody of those who are to execute the sentence, ready to be delivered to them according to law. It is this duty which requires him to see that a proper record is made up when an appeal is taken, to properly present the people's case in the appellate tribunal; to advise and assist in laying the facts of the case before the governor when application for clemency is made. It may be assumed that the reason why the act is silent respecting who shall appear before the commissioner for the people when the hearing is had is for the reason that such duty devolves upon the district attorney by virtue of his office. The latter has tried the case, is familiar with the facts, and appreciates the force of the new evidence offered. It is his duty to see that no false impressions be created by which justice is defeated, to the same extent that it is his duty to see that the facts constituting the crime are laid before the court upon the trial. The commissioner is not selected for this purpose. He is selected to take the testi-

43 N.Y.S.—56

mony, and certify it to the governor. The act does not contemplate that he shall examine the witnesses or produce testimony for the establishment of the truth, but simply to see that what is given reaches the governor as given. The case in which this proceeding was resorted to furnishes of itself the strongest reason and argument why it was essential for the district attorney to intervene, and why the duty was necessarily imposed upon him so to do. The object of every prosecution for an offense committed against the law is to punish the offender, and vindicate the law. This result in many cases would not be accomplished if, at the conclusion of a trial and sentence, the district attorney severed all connection with the case. Yet there is very little express authority which in terms imposes any duty upon him beyond a trial and conviction. For the most part the law which mentions the performance of any act assumes that a duty exists, omitting its imposition in express terms. Thus, in respect to a stay of conviction after sentence, notice is required to be given to the district attorney (Code Cr. Proc. § 529), but no express duty in connection therewith is enjoined upon the officer; yet the notice is required, in order that he may oppose the stay, if such course be proper. In like manner he must have notice of appeal, of surrender of bail, etc. Code Cr. Proc. §§ 523–529. But in neither case is any express duty enjoined in connection therewith, yet it cannot be doubted that an obligation exists to do what is necessary to be done regarding the matter to which the notice relates. The statutory duty is to conduct all prosecutions for crimes and offenses. 1 Rev. St. p. 383, § 89. Under this section it was held that such powers as were necessary for the proper performance of duty were conferred as incidental to the obligation imposed; that the duty to conduct prosecutions embraced what was properly essential to bring a criminal to trial, as well as the proceedings of the trial. Accordingly it was held to include efforts to effect his arrest and custody in a foreign jurisdiction to await extradition, and thus bring him within the jurisdiction of the court (People ex rel. Gardenier v. Board of Sup'rs of Columbia Co., 134 N. Y. 1, 31 N. E. 322), and the expenses of such proceedings were held to be a proper charge against the county. It is quite as essential,—indeed, the object, as we have before observed, is to punish the offender, and vindicate the law, and the obligation to effect this end carries with it the power to take such steps as will secure this result. It is no greater extension of power or of duty to say that the district attorney shall intervene in a proceeding, and present testimony, when the object sought is to secure the release of a convicted felon, than it is to say that he shall cause the arrest and secure the custody of the same person in order that he may be tried. The object in both cases which is sought to be accomplished is to punish the offending party by bringing him to trial and conviction in the one case, and see that he does not escape punishment through the creation of a false case in the other. And we think the expenses in the one case are as proper, and create a charge in the same manner and to the same extent, as in the other. This case makes application of the same principle that found application in the Gardenier Case, supra, the only difference being that

in that case the proceedings were initial, to bring the party to trial; here they are final, to secure the punishment of the offender. But the object of both was the same, leading to the same result. We are therefore of opinion that the expense which was incurred in this case was a proper charge, and within the province of the district attorney to incur, and that the same became a charge upon the county of New York, and this irrespective of the fact whether the act of 1887 authorized the governor to incur such expense or not.

So far as defendant's third point is concerned, no such question is raised upon the trial of the action. The motion for a nonsuit was upon "the ground that the facts in question do not constitute a cause of action, in that they show no liability on the part of the city of New York for the payment of the claim." The proof, as we have seen, constituted the claim a proper charge against the county of New York, which charge was, by virtue of the consolidation act, payable by the city. Laws 1882, c. 410, § 27. No change was made in the status of the county officers, and the district attorney remained a county officer, as his status was fixed by the constitution. Id.; Const. art. 10, § 1.

No claim was urged upon the trial that there was lack of appropriation to meet this expense; on the contrary, the proof upon the part of plaintiff tended to establish that a sum was appropriated to meet the deficiency that existed for the year in which this charge was created, and when this claim was rejected the reason assigned was that it was only chargeable against the state, and not against the city, and the motion was based upon this ground. So that, if we assume that this was an essential requisite, as the point was not taken, it is not available now. If we consider it as raised by the motion, then proof existed from which the court could have found that there was a fund appropriated, which was available for its payment.

Judgment should be ordered for the plaintiff upon the motion, with costs. All concur.