(35 Misc. Rep. 189.)

## PEOPLE v. FULLER.

(Court of General Sessions, New York County. May, 1901.)

PAUPER CRIMINAL—ASSIGNMENT OF ATTORNEY.
    A destitute defendant, charged with murder in the first degree, can have no part in selecting the counsel authorized to be assigned him by the court, and paid by the county, under Code Cr. Proc. § 308.

John Fuller was indicted for murder in the first degree, and applies for the assignment of counsel selected by him. Motion denied.

FOSTER, J. This is an ex parte application by the defendant, who is charged with murder in its first degree, for the assignment by the court, for his defense, of counsel selected by him. It has been the custom of our courts from time immemorial, when a defendant was without counsel, and without means, to assign some member of the bar to that important and honorable, though onerous, duty. Until the enactment of the law hereinafter referred to, there was no power in the court to order payment for the services, however meritorious and valuable, rendered on such assignment. People ex rel. Brown v. Board of Sup'rs of Onondaga County, 4 N. Y. Cr. R. 102; People ex rel. Ransom v. Board of Sup'rs of Niagara County,

78 N. Y. 622. The injustice of this, both to the bar and the accused, was most apparent, though the duty thus imposed by the court upon counsel had invariably been ably and conscientiously discharged. In 1897 the legislature, by chapter 427 of the Session Laws, evidently recognizing this injustice, provided that, where the crime charged against the defendant is punishable with death, counsel so assigned by the court upon arraignment may be paid his personal and incidental expenses and for his services not more than $500. Code Cr. Proc. § 308. It may well be doubted whether, under this statute, the court has any power to allow any compensation to counsel assigned to defendant after arraignment, or unless assigned upon arraignment. This change in the law has not unreasonably caused the assignment in such cases to be eagerly sought for, and, in some instances, through means not above reproach. It seldom happens that a defendant is arraigned, charged with murder in its first degree, without many applications for such assignment being made to the judge before whom the arraignment is had, by counsel claiming previous retainer or especial familiarity with the case, or claiming to represent the wishes of the accused or his family, or some other equally cogent reason. It has, indeed, been a matter of common rumor that zealous "counsel" have sometimes offered to divide their prospective fees with the family and friends of the accused, in consideration of their inducing the accused to ask the court for their assignment as counsel. The accused, in prison, and with a relatively limited acquaintance as to the capability and suitability of counsel, and oppressed, as he is, with the gravity of his situation, is often but poorly able to choose or recommend. It is the plain duty of the court to protect the defendant from such improper influences; and to permit him, under these circumstances, to suggest counsel to be assigned by the court, and to be paid by the state, is to open the door to such grave abuses that I am unwilling to encourage it. There is doubt whether a defendant able to retain and pay his own counsel will ever do so if he knows that upon his application the court will assign, and the state pay them. It follows, therefore, that if the court is to assign counsel, it should do so free from any prompting or suggestion whatsoever either by the defendant or by counsel desiring such assignment. The defendant is wholly free to select his own counsel, but if the court is to assign, and the state is to pay, then the independent selection by the court, by removing the temptation, will prevent the improper solicitation of such assignments by means both despicable and unprofessional, and will, at the same time, permit the assignment in proper cases of counsel who are eminent, able, and honorable. If, in an isolated case, this rule should possibly work hardship, it is clear to my mind that it will, in the end, result to the great advantage of the accused, the community, and the bar. I may add that no reflection is intended nor entertained as to the two counsel whom I am asked to assign in this particular case, and this memorandum is written that they may know why I deny this application, and that the bar may know my views for their future guidance. Motion denied.