(87 App. Div. 193.)

### PEOPLE ex rel. ACRITELLI et al. v. GROUT, Comptroller.

(Supreme Court, Appellate Division, First Department. October 23, 1903.)

1. CRIMINAL LAW—DEFENSE OF CRIMINAL—APPOINTMENT OF COUNSEL—SERVICES—COMPENSATION—PAYMENT BY COUNTY—STATUTES—CONSTITUTIONAL LAW.

Code Cr. Proc. § 308, requires the court to appoint counsel for an indigent person accused of crime, and declares that, when services are rendered by counsel in pursuance of such assignment in a capital case, the court may allow such counsel his personal and incidental expenses, and also reasonable compensation for his services, which allowance shall be a charge on the county in which the indictment is found, to be paid out of the court fund on the certificate of the judge presiding at the trial. *Held* that, since such expenditure had a direct relation to a public function, and was for the proper execution of the criminal laws of the state, it was not in violation of Const. art. 8, § 10, as an appropriation of the money of a county to the aid of an individual.

2. SAME—TIME OF APPOINTMENT.

Code Cr. Proc. § 308, providing that when a prisoner is arraigned without counsel he must be asked if he desires counsel, and, if so, the

court must assign counsel, and providing that in a capital case the court shall allow counsel so assigned reasonable compensation, payable by the county, does not limit the authority of the court to the appointment of counsel at the arraignment, but authorizes such appointment at any time before trial or at the trial.

Ingraham and Van Brunt, JJ., dissenting.

Appeal from Special Term.

Mandamus by the people, on the relation of Frank Acritelli and another, against Edward M. Grout, comptroller of the city of New York. From an order requiring defendant to pay relator the amount awarded by a justice of the Court of General Sessions to Ambrose H. Purdy for compensation as counsel appointed to defend one De Medicis, indicted for homicide, the comptroller appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Theodore Connoly, for appellant.

Cæsar B. F. Barra, for respondents.

HATCH, J. I am not able to concur in the view that section 308 of the Code of Criminal Procedure violates the provisions of article 8, § 10, of the state Constitution. That it does or not depends upon whether the appropriation of public moneys for the defense of an individual indicted for a capital crime is for the exclusive benefit of the individual so charged, or for a county purpose. If the former, it is unconstitutional; if the latter, it is a valid exercise of legislative power. It will not be denied but that the administration of the criminal law is a governmental function, the expense of which is charged upon the respective counties in which violations of the law are committed, and public moneys appropriated to the payment of obligations incurred in such administration are so appropriated for a public purpose. The statute under consideration authorizes the payment of money in connection with the administration of the criminal law. It therefore has direct relation to a public function, and if, in any view, it can be said to be used for a correct and proper execution of the criminal law, it not only falls within the spirit of the constitutional enactment, but is literally within its terms. So far. as the general public is concerned, it is represented by the public prosecutor, and all expenses connected with the administration of his office, whether expressly authorized by statute or incidental to the performance of the duties of that office, become a public charge, and are properly payable as a county expense. This extends to all essential matters before indictment as well as after (People ex rel. Gardiner v. Supervisors, etc., 134 N. Y. 1, 31 N. E. 322), and to all necessary proceedings after conviction and before the execution of the sentence (Tompkins v. Mayor, 14 App. Div. 536, 43 N. Y. Supp. 878). Nor is it doubted but that such expenses are for a county purpose, and, when properly incurred, payable as such. We come, therefore, to consider whether money appropriated for the defense of an individual indicted for a capital crime is any less appropriated for a public purpose than for his prosecution. The answer to this must depend upon the public policy of the state in relation to such

matter as it existed at common law, as found expressed in the constitutions and statutes, the language of the courts construing the same, and the benefit to be derived from such policy to the commonwealth. The common law relating to this subject underwent a considerable change in the country of its source. The government of England in early times denied to accused persons the right to be heard by counsel in their defense. Later days brought with them better and more humane rules, and there came a time when a defendant under indictment for a capital offense was assigned counsel. 2 Sharswood's Blackstone, 355; 1 Chitty's Crim. Law, 406. Such was the rule of the common law when it was adopted by this state and made a part of the law of the land. In the administration of the criminal law, therefore, within this state, there has been no time when a defendant indicted for a capital offense has been denied the benefit of counsel. If able to employ, he has been heard by counsel of his own choice; if unable, the judge presiding at the trial has assigned counsel to his defense, and in doing so was performing a public duty in the administration of justice, and was required by law so to do. Article 6 of the Amendments to the Constitution of the United States provides, among other things, that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, "be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." This rule of law has always existed, and was so declared in the Bill of Rights prior to its incorporation into the Constitution. It has been coexistent with colonial and constitutional government in this state, and now finds place in article 1, § 6, of the state Constitution. There has been no time in the governmental history of this state when the court lacked the power to assign counsel for the defense of indigent persons charged with crime (People ex rel. Sanders v. Supervisors of Erie County, 1 Sheld. 517); and it has been a part of the obligation assumed by counsel upon their admission to the bar to defend poor prisoners upon assignment by the court. Until the passage of the statute now under consideration, such service was rendered by counsel so assigned without pecuniary compensation, and such service, however onerous, created no legal liability against the county in favor of the person rendering the same. People v. Supervisors of Albany, 28 How. Prac. 22; People ex rel. Ransom v. Board of Supervisors of Niagara County, 78 N. Y. 622.

It has always been the policy of the state not to permit a plea of guilty in a capital case. The reason for this rule rests in the fact that persons desiring to shield others, or laboring under some strong emotion, or mentally unbalanced, or through other infirmities, have confessed to capital offenses of which they were not guilty, and upon such confession been executed as felons. The principle which found place in this government has been and still is that the welfare of the state is dependent upon the existence of the citizen; and in proportion as the citizen is brought to the highest state of perfection, both in intellect and morals, the state is stronger. The government, therefore, has a distinct interest in the preservation of

the lives of its citizens and in their moral and intellectual upbuild-
ing. It becomes, therefore, the supreme obligation of the state to
see that no citizen's life is taken under any circumstances, save as
he has forfeited the same to the state through some felonious act,
or his continued existence imperils the stability of the government.
Felonious acts creating such a condition are carefully defined in·
statutes and constitutions, and furnish the only rule under which
human life may be taken. It was said by Judge Vann in People
ex rel. Brown v. Board of Supervisors of Onondaga, 3 How. Prac.
(N. S.) 1, in a learned opinion discussing a similar question:

"The services rendered by the relator were of much value, not only to the
prisoner in whose behalf they were performed, but also to the public gener-
ally, who have the same interest in the acquittal of the innocent as in the
conviction of the guilty."

This language was adopted by the General Term of the Fourth
Department in the same case. 4 N. Y. Cr. R. 102. While it is un-
doubtedly true that the citizens of this state assume the risk of de-
fending themselves without aid from the public against even un-
just law, yet such rule is subject always to the interest of the
state; and where such interest requires protection the Constitution
authorizes an appropriation of public funds for the purpose. It may
be said that such use of the public funds operates for the benefit of
the individual placed upon trial for a capital offense, but such interest
is only incidental to the discharge of the obligation which the state
owes to all of its citizens and inhabitants that human life and prop-
erty shall be made safe, and that neither the one nor the other shall
be taken away except by due process of law. The same learned
judge who wrote in People ex rel. Brown v. Supervisors, supra, in
speaking upon this subject, said:

"For time out of mind, in all governments where the common law pre-
vailed, a person prosecuted for crime has been compelled to pay his own ·
expenses when he had the means of doing so. People ex rel. Brown v. Board
of Supervisors, 4 N. Y. St. Rep. 102, affirmed 102 N. Y. 691. If without
means, the counsel assigned by the court served without pay, except under
a recent statute a moderate allowance may be made in a capital case. Laws
1897, p. 569, c. 427; Code Cr. Proc. § 308. This exception is founded on the
theory that a fair trial cannot be had without the aid of counsel, and that
money paid from public funds to counsel appointed by the court for a prisoner
without means is paid for a public purpose."

In re Chapman, 168 N. Y. 80, 61 N. E. 108, 56 L. R. A. 846, 85
Am. St. Rep. 661.
It being the policy of the law, therefore, not to permit a human life
to be taken except the offense which forfeits the life is established
after due trial, it necessarily follows that the state is burdened with
the responsibility and duty of conducting such trial, and money ap-
propriated therefor is necessarily appropriated for a public purpose,
and there can be no difference in principle between authorized ex-
penditure of money for such purpose by the public prosecutor and the
appropriation of it by the Legislature in order to secure to the de-
fendant a fair trial. Such is the express holding of the last above
cited case, and its ruling is abundantly supported by the cases cited
therein illustrating what constitutes expenditure of money for a pub-

lic purpose. That the courts have so regarded it is apparent from numerous decisions. People v. Heiselbetz, 30 App. Div. 190, 51 N. Y. Supp. 685; People ex rel. Czkai v. Coler, 44 App. Div. 183, 60 N. Y. Supp. 656; People v. Barone, 161 N. Y. 475, 55 N. E. 1091; People v. Ferraro, 162 N. Y. 545, 57 N. E. 167. The statute authorizing the payment of compensation to counsel assigned to defend in capital cases is in harmony with the modifications which have taken place respecting the rules which have obtained between attorneys and clients. The honorarium of ancient times has given way to practical conditions, where the attorney is not only entitled to compensation for the service he renders, but courts interpose to sustain his lien for such services, and protect him against the fraud of parties. National Ex. Co. v. Crane, 167 N. Y. 505, 60 N. E. 768, affirming 54 App. Div. 175, 66 N. Y. Supp. 361. The state has come to recognize the fact that the burdens imposed upon counsel in the defense of persons charged with capital crime are more onerous than should be borne without compensation, and, as such counsel is engaged in a public service for the benefit of the state, it is recognized in all of the cases in which the occasion arose to discuss the subject as furnishing equitable ground upon which to base an equitable claim in favor of the counsel against the state. In none of the discussions has it been doubted by the courts that such service was a public service, or but that there existed power in the Legislature to provide compensation therefore (People v. Triola, 175 N. Y. 407, 67 N. E. 968); and when it is made to appear that the obligation to see the proper defense of the person charged with a capital crime is imposed upon the state equally with his prosecution, it is readily apparent that there can be no difference in principle between the appropriation of money for his prosecution and for his defense. For these reasons, among others, it would seem to follow that the statute in question is constitutional, and should therefore be sustained.

Nor do I find myself in harmony with a construction of the statute which limits the authority of the court to assign counsel to the defense, who may receive compensation thereunder only at the time of the arraignment. The purpose of the statute is to secure the aid of counsel upon the trial. In theory the arraignment of the defendant supposes that the trial will proceed at once. In actual practice some considerable time elapses between such event and the trial, but counsel is assigned usually at the arraignment, in order that time may be given to prepare for the trial; but the object which the statute seeks to accomplish is the benefit of counsel at the time of the trial, and if, for any reason, the assignment of counsel is not made at the time of the arraignment, I think the statute broad enough in its terms to authorize such assignment at any time before the trial, or upon the trial; and when the counsel is so assigned, and participates in the trial thereunder, he becomes entitled to the compensation for which the statute provides. It would be most inequitable, to say the least, where the state has availed itself of the benefits derived from the assignment, that it should be relieved from liability to pay therefor. There would exist in such case all of the elements upon which the doctrine of estoppel could be predicated when counsel asks for

compensation. I am of opinion that, as the statute contemplated providing counsel to participate in the trial for the defendant, when counsel is so assigned, whether at the arraignment or subsequent thereto, if he actually takes part in the trial in the defense of the defendant, he falls within the provisions of the statute, and becomes entitled to his compensation.

If these views be sound, it follows that the order appealed from should be affirmed, with $10 costs and disbursements to the respondents.

PATTERSON and LAUGHLIN, JJ., concur.

INGRAHAM, J. (dissenting). The only question presented on this appeal is as to the constitutionality of section 308 of the Code of Criminal Procedure. As originally enacted, this section provided that if the defendant was indicted for a crime, when he appeared for arraignment without counsel "he must be asked if he desire the aid of counsel, and, if he does, the court must assign counsel." By chapter 521, p. 1118, of the Laws of 1893, there was added to this section a provision that:

"When services are rendered by counsel in pursuance of such assignment in a case where the offense charged in the indictment is punishable by death, the court in which the defendant is tried may, in its discretion and upon satisfactory proof that such defendant is wholly destitute of means, award such counsel a reasonable compensation for his services which shall be a charge upon the county in which the indictment in the action is found, to be paid out of the proper fund upon the certificate of the judge or justice presiding at the trial."

This section of the Code was further amended by chapter 427, p. 569, of the Laws of 1897, as follows:

"When services are rendered by counsel in pursuance of such assignment in a case where the offense charged in the indictment is punishable by death or on an appeal from a judgment of death, the court in which the defendant is tried, or the action or indictment is otherwise disposed of, or by which the appeal is finally determined, may allow such counsel his personal and incidental expenses upon a verified statement thereof being filed with the clerk of such court, and also reasonable compensation for his services in such court, not exceeding the sum of five hundred dollars, which allowance shall be a charge upon the county in which the indictment in the action is found, to be paid out of the court fund, upon the certificate of the judge or justice presiding at the trial or otherwise disposing of the indictment, or upon the certificate of the appellate court, but no such allowance shall be made unless an affidavit is filed with the clerk by or on behalf of the defendant, showing that he is wholly destitute of means."

The defendant claims that this section of the Code of Criminal Procedure, as now in force, is in violation of article 8, § 10, of the Constitution. That section provides:

"No county, city, town or village shall hereafter give any money or property * * * to or in aid of any individual, * * * nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes."

It is claimed by the defendant that the payment to counsel for a person accused of a crime for services rendered, not to the county, but to the prisoner, is not a county purpose, within the meaning of

this provision of the Constitution, but is, in effect, a provision by which the county is compelled to give money to or in aid of an individual. In the Matter of Chapman, 168 N. Y. 80, 61 N. E. 108, 56 L. R. A. 846, 85 Am. St. Rep. 661, the statute under consideration provided for the payment by the municipal corporation of reasonable counsel fees and expenses made or incurred by a city or county officer in successfully defending himself in any trial or proceeding to remove him from office, or to convict him of any crime alleged to have been committed in the performance of or in connection with his official duties; and it was there held, affirming the decision of this court (57 App. Div. 583, 68 N. Y. Supp. 1135), that the act then in question was in violation of the constitutional provision above referred to. In speaking of this provision of the Constitution which was adopted as an amendment to the Constitution in 1874, it was said that this amendment was passed in consequence of several decisions of the courts of this state which held that the Legislature had power to recognize claims founded in equity and justice in the largest sense of those terms, or in gratitude or charity; that, while it has been held that this provision does not prevent the Legislature from authorizing the payment by a municipal corporation of a claim which, although it could not be enforced by the courts, is founded in justice, supported by a moral obligation—one that would have been legally created if the proceeding of the local authorities had been regular—or when the payment of a claim otherwise valid was barred by the statute of limitations, or one for money expended or services performed for the benefit of a city without lawful authority, to justify the payment of the money of a city or county there must in some way be an obligation upon the municipal corporation. The county is prohibited by this constitutional provision from giving any money or property to or in aid of any individual, or incurring any obligation except for county purposes. Where money has been expended for the benefit of a county, where services have been actually rendered to a county, where the county has received the value of supplies furnished to it, an obligation for the payment of that from which the county has benefited would flow from the benefit received, and the payment of such an obligation would not be a gift of money to or in aid of an individual. We have in this statute now under consideration an attempt to require the payment of public moneys by a county where no services have been rendered to or benefit accrued to the county, but by a direction to pay the fees of counsel assigned to defend a person charged with the commission of a crime for services rendered to the individual. That it would·be an act of charity to provide a person in this situation with the means of defense would not, probably, be disputed, but it seems to me that it is money given to or in aid of an individual whose defense had become necessary by reason of the charge. In ascertaining the meaning of this provision of the Constitution the exception is quite significant, for it is provided that "this section shall not prevent such county, city, town or village from making such provision for the aid or support of its poor as may be authorized by law." What is prohibited is the giving of the money to or in aid of an individual, except provision for the aid or support of the poor may be made. In Chap-

man v. The Mayor, supra, it was held that a statute that authorized the payment of counsel fee incurred by a public officer in defending the title to his office, or to prevent his removal from office, was giving to or in aid of an individual money or property within the provision of this section. In Matter of Straus, 44 App. Div. 425, 61 N. Y. Supp. 37, we held that the provision of this act, so far as it authorized a public officer who had been indicted for a crime to recover counsel fees expended by him in his defense, was unconstitutional; and in Matter of Jensen, 44 App. Div. 509, 60 N. Y. Supp. 933, a similar view was taken of that provision by the Appellate Division in the Second Department. It would seem to follow that the Legislature had no power to impose upon the county of New York an obligation to pay a sum of money to Mr. Purdy as compensation for services performed for the benefit of a person charged with a crime. In Chapman v. The Mayor, however, in alluding to this section of the Code of Criminal Procedure, it was said:

"This exception is founded on the theory that a fair trial cannot be had without the aid of counsel, and that money paid from public funds to a counsel appointed by the court for a prisoner without means is paid for a public purpose."

The court is here stating the theory upon which these payments have been attempted to be justified; but further on the court say:

"Whoever lives in a country governed by law assumes the risk of having to defend himself without aid from the public against even unjust attempts to enforce the law, the same as he assumes the burden of taxation. As was said in Matter of Jensen, supra, it is 'a part of the price he pays for the protective influence of our institutions of government.'"

I do not think, in considering this constitutional prohibition, that it is any less a gift for the benefit of an individual that the person charged with the .crime is unable to pay his counsel. In Chapman v. City of New York, supra, it appeared that the city had charged one of its officers with an offense which would justify his removal if proved. Yet it was held that his necessary expenses in meeting the unjust attack was not such a charge as the Legislature could require the city to pay. In this case the state has charged an individual with a crime. He has been tried and proved innocent, and the county has been ordered to pay a fee allowed his counsel for services rendered to him upon that trial. No service was rendered to the county or to the people of the state for which the counsel for the prisoner asked to be paid, and, assuming that it was for the interest of the public that upon the trial the defendant should have the advantage of counsel, it is none the less a gift of the money of the county to or in aid of an individual. I am unable to see how it can be said that, if the direction for the payment of money in the Chapman Case or in the Straus Case was unconstitutional, this statute is constitutional, which does just what the act of 1899 in the two cases just cited attempted to do in the case of a public official indicted for an offense or a crime relating to his official conduct. Counsel is as necessary for the proper conduct of the trial of an action against a public official for a crime as it is against a person not a public official indicted for homicide. We are speaking of the power

of the Legislature, not of its proper exercise; and while an unfortunate human being, without means, accused of the crime of homicide, appeals much more strongly to the sympathy than a public official who is accused of a less serious offense, when you consider the question of the power of the Legislature I cannot see that there is any distinction between the two cases; nor does it seem that the assignment of counsel by the court changes the nature of the payment to counsel. The Code requires that a prisoner shall be asked, when he appears for arraignment, if he desires the aid of counsel, and, if he does, the court is directed to assign him counsel to conduct his defense; but a counsel thus assigned does not become a public official, nor does he act for the county. When a counsel is admitted to practice, he assumes an obligation to aid the court in the administration of justice; and while he is entitled to receive compensation for his service, the person for whose benefit the services are rendered is the one who is under obligation to pay therefor, and imposing upon the county a payment for services thus rendered to the individual is, it seems to me, clearly a payment or giving of money to or in aid of an individual, and not for a city or county purpose. We have seen of late many attempts to impose upon municipal corporations or counties obligations which are not for county or city purposes, and the legislation of the past few years illustrates the importance of a strict enforcement of this constitutional prohibition. The abuses that have grown up under this provision of the Code of Criminal Procedure are illustrated by what was said by Judge Foster in People v. Fuller, 35 Misc. Rep. 189, 71 N. Y. Supp. 487, and I think, whatever hardship the enforcement of this constitutional prohibition may work in a particular case, it is essential to the protection of the people that the use of money raised by taxation should be strictly limited to a use for the benefit of the people from whom it is collected.

My conclusion, therefore, is that this whole provision for the payment of counsel for persons charged with criminal offenses, no matter what the charge or the ability of the person to pay, is a violation of this provision of the Constitution, and that no payment by a county for such charges can be enforced. It also appeared that the service rendered for which this claim was made was not within the provisions of section 308 of the Code of Criminal Procedure. It is there provided that when the prisoner is arraigned without counsel he must be asked if he desires counsel, and, if so, the court must assign counsel. The section therefore only applies to a case where, upon his arraignment, the prisoner is without counsel, for the section then provides that, "where services are rendered by counsel in pursuance of such arraignment in a case where the offense charged in the indictment is punishable by death, the court" may allow such counsel his personal and incidental expenses, which allowance will be a charge upon the county in which the indictment in the action is found, to be paid out of the court fund. To entitle counsel to compensation under this statute, he must be assigned by the court when the prisoner is arraigned without counsel. Now, in this case it appeared that when the prisoner was arraigned Mr. Purdy had been employed by the

prisoner and engaged in his defense; that he conducted his defense before the coroner, and upon the indictment of the prisoner his counsel appeared for him, and pleaded not guilty of the charge of murder for which he was indicted; that at the arraignment no application was made by the prisoner, or on his behalf, for the assignment of counsel; that subsequently, on July 8, 1902, an application was made to a judge other than the judge before whom the prisoner was arraigned, and counsel was assigned for the defendant to protect his interest and defend him upon the trial. The prisoner having thus had counsel at the time of his arraignment and plea, and at that time having made no request that counsel be assigned him, the court was under no obligation to assign counsel for the prisoner, and the provision of this section which made the fee of a counsel assigned to defend the prisoner upon his arraignment a county charge does not apply.

I think, therefore, that the order appealed from should be reversed and the proceeding dismissed, but, under the circumstances, without costs.

VAN BRUNT, P. J., concurs.