In the Matter of the Application of MEYER KRAUSHAAR, Respondent, for a Peremptory Writ of Mandamus against CHARLES W. BERRY, Comptroller of the City of New York, Appellant.

Second Department, November 22, 1929.

*Joseph P. Reilly* [*Herbert S. Worthley* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the appellant.

*Meyer Kraushaar* [*Jesse Climenko* with him on the brief], for the respondent.

HAGARTY, J. By order of the County Court of Kings county, Meyer Kraushaar, the petitioner, and David L. Malbin, attorneys at law, were assigned to defend one Thomas Moran upon an indictment charging him with the crime of murder in the first degree. The trial of the indictment resulted in the conviction of the defendant as charged in the indictment.

The petitioner alleges that he expended $423.80 to secure the personal attendance at the trial of Harvey L. Culbertson, a seaman in the United States navy, and that he paid $279.70 to A. J. Kleimeyer to interview witnesses and procure their attendance at the trial.

The County Court of Kings county certified that the two expense items in question were " proper and necessary " and, by order, directed the comptroller of the city of New York to pay them. The comptroller refused to comply and this proceeding was then instituted and the order appealed from secured, which grants a peremptory writ or order of mandamus directing the comptroller to fully comply with the order of the County Court of Kings county by paying to the petitioner the two items of expenses in question.

Concerning the witness Culbertson, it appears that Moran, prior to his indictment, had served in the United States navy, and had been discharged therefrom because suffering from Jacksonian epilepsy. For the purpose of determining whether the defense of insanity would be available, respondent investigated the navy's hospital records and interviewed one Dr. Lowry, a navy physician who had formerly treated defendant Moran. From Dr. Lowry, who had never seen Moran under the influence of an epileptic fit, he learned that Culbertson, an orderly in the navy hospital, had probably seen the defendant in such condition. For the purpose of establishing as far as possible the defense of insanity, the respondent communicated with the navy authorities, who promised to produce Culbertson at the trial upon payment in advance of Culbertson's necessary traveling expenses from San Pedro, Cal., amounting to the sum as hereinbefore stated.

A reversal is required. The relators are to be commended for their efforts in the defendant's behalf. In so far as this record discloses, they left nothing undone to procure for defendant Moran a fair trial. The remedy, however, in my opinion, lies with the Legislature and not with the court. Under the recent ruling by the Court of Appeals in *Matter of Reilly* v. *Berry* (250 N. Y. 456) it is conceded by both parties that the allowances, if permissible, come under the heading of " personal and incidental expenses " of assigned counsel.

In *Matter of Waldheimer* ([1903] 84 App. Div. 366) it was held

that an allowance cannot be made for the employment of a lawyer by assigned counsel to aid them in looking up witnesses, taking their statements and marshaling the evidence for use on the trial.

That case followed and approvingly cited that of *People ex rel. Cantwell* v. *Coler* ([1901] 61 App. Div. 598: affd., 168 N. Y. 643), in which the court laid down the rule by which is measured the difference between expenses incurred by assigned counsel that fall within the purview of the statute and those that do not. The allowance in the *Cantwell* case was for service of expert witnesses; and reversing the order of the court below and denying the application for a peremptory mandamus, the Appellate Division said:

" The only authority for granting the allowance must be found, of course, in the statute. It provides for the payment of personal and incidental expenses. The relators seek to sustain the allowance for witness charges upon the ground that they are incidental expenses. They were undoubtedly expenses of a trial, such as would ordinarily be borne by a party to an action. The personal and incidental expenses for the payment of which provision is made are such as relate to those incurred by counsel on his personal account. The word ' incidental,' as used in the statute, is associated with the word ' personal,' and is used conjunctively. It does not confer authority upon the counsel to make contracts of a special character involving a large liability to be cast upon the county, for by the section of the Code cited the compensation and the personal and incidental expenses of counsel are made a county charge. The word ' incidental,' as used in the statute, must be construed in accordance with its ordinary meaning, which is: ' Of minor importance, occasional, casual, as incidental expenses;' ' something subordinate or casual; often used in the plural to mean minor expenses.' (Century Dict.)

" We cannot construe this section of the Code as so enlarging the meaning of the word ' incidental ' as to give authority for the allowance as a county charge of such items of expenditure as those now claimed by the relators."

It was also held in *People ex rel. Levy* v. *Grout* (37 Misc. 430) that the expense of a daily transcript of stenographer's minutes ordered by assigned counsel could not be paid as it was unauthorized under the statute.

After the decision in the *Cantwell* and *Levy Cases* (*supra*), the statute was amended by chapter 242 of the Laws of 1918 and chapter 355 of the Laws of 1923, to make provision for the payment of stenographer's minutes and fees of expert witnesses. Indeed, the whole course of legislation on this subject, as well as the uniform ruling of our courts, leads to the conclusion that expenses incurred

by one engaged by assigned counsel to interview and subpœna witnesses, and the cost of securing the attendance of a witness at the trial from out of the State are not personal and incidental within the plain meaning of the statute, but are covered by compensation allowed him under his assignment.

In *People* v. *Ricci* (222 App. Div. 819) an order directing a peremptory mandamus order to issue against the comptroller, compelling him to pay to assigned counsel the sum of $156 for " personal and necessary disbursements in the preparation of the trial " of a capital case, was affirmed. We cannot, however, follow this case in the light of the *Reilly Case* (*supra*). In that case the Court of Appeals held that payments to detectives employed to investigate and report as to the character of a witness are not the " personal and incidental expenses " of counsel referred to in section 308 of the Code of Criminal Procedure, for which an allowance may be made. It was further held that an allowance may not be made for fees of experts where it does not appear that the employment was directed by the court, nor that expert witnesses had been or were to be called by the prosecution, and adhering closely to the statute, the court ruled that the direction for the employment of experts should be entered in the court's minutes or else embodied in a written order signed by the presiding judge, and is unauthorized except where experts have been or are to be sworn for the prosecution. As to what may and what may not be included under the heading of " personal and incidental expenses," I quote the following from the opinion: " At common law, service as assigned counsel was given without pay (*People ex rel. Karlin* v. *Culkin*, 248 N. Y. 465, 471). So it still is, except in criminal actions where the offense charged in the indictment is punishable by death (Code Crim. Proc. § 308). Requital has its origin and measure in the provisions of the statute.

" (1) Payments to detectives employed to investigate and report as to the character of a witness are not the ' personal and incidental expenses ' of counsel, though paid out of his purse. The scope of the statute may have been uncertain at the outset. Judicial construction has combined with long-continued practice to narrow and define it. The section was first considered by this court in *People ex rel. Cantwell* v. *Coler* (61 App. Div. 598; affd., on opinion below, 168 N. Y. 643). In that case, decided in 1901, we held that there could be no allowance for the services of expert witnesses whom counsel had employed and paid. The payments, it was said, ' were undoubtedly expenses of a trial, such as would ordinarily be borne by a party to an action.' They were not expenses incidental to the distinctive services of counsel. ' The personal and incidental

expenses for the payment of which provision is made are such as relate to those incurred by counsel on his personal account.' Traveling expenses incurred in attendance at the court, printing charges for the preparation of a brief in accordance with the rules, these are illustrations of disbursements within the purview of the statute. In line with that construction are decisions excluding payments to assistants employed to investigate the facts (*Matter of Waldheimer,* 84 App. Div. 366), and payments to consultants employed to examine a defendant and advise as to the defense (*People ex rel. Van Zandt* v. *Prendergast,* 157 App. Div. 486). The amendment of 1918 which made allowance for the fees of experts, but only under strict conditions, is a recognition by the Legislature of the correctness of the ruling that such expenses were not covered by the statute unamended. Bills for detectives like those for experts mount often into large figures. The State has charged its civil subdivisions with a restricted liability for the services of counsel. It has not charged them as an incident with an unrestricted liability for the services of others, not counsel, employed at a price to ferret out the evidence available against it. ' Only clear warrant of law will justify the assumption of a power to control the public purse ' (*People ex rel. Rand* v. *Craig,* 231 N. Y. 216, 221)."

Approaching the item of $423.80 allowed for Culbertson, it is not argued that there is any statutory provision for this item except as already stated, that is, under the heading of " personal and incidental expenses." However, were he a witness within the State and had the fees, as prescribed by the statute, been paid to him, there would be no question about it, and the allowance would be permissible under the provisions of section 617 of the Code of Criminal Procedure. The trouble here is that Culbertson was brought from a point without the State, and the statute makes no provision for traveling fees, in such a case, to the boundary line of the State. Section 636 of the Code of Criminal Procedure provides: " When an issue of fact is joined upon an indictment, the defendant may have any material witness residing out of the State, examined in his behalf, as prescribed in this chapter, and not otherwise." And section 657 of the said Code states that " The deposition, taken under the commission, may be read in evidence by either party on the trial, and the same objections may be taken to a question in the interrogatories, or to an answer in the deposition, as if the witness had been examined orally in court." There is no provision in the law providing for fees and mileage of a witness brought from a point without the State to the boundary line in either a civil or a criminal action. Traveling fees, however, may be allowed, estimated from the place where he passed in

coming to the trial. (*Taaks* v. *Schmidt,* 25 How. Pr. 340; *Wheeler* v. *Lozee,* 12 id. 446; *Hinds* v. *Schenectady County Mutual Ins. Co.,* 7 id. 142.) But there is no such claim in this case.

The peremptory mandamus order should be reversed upon the law and the facts, without costs, and the application denied, without costs.

LAZANSKY, P. J., SEEGER and CARSWELL, JJ., concur; KAPPER, J., dissents.

Peremptory mandamus order reversed upon the law and the facts, without costs, and motion denied, without costs.