Peter T. Farrell, J.
By this motion, counsel, assigned to an indigent defendant charged with murder in the first degree, seek allowances for their professional services performed and personal and incidental expenses incurred in the' discharge of their duties. (Code Crim. Pro., § 308.) They have been diligent in the defendant’s interests and have rendered him substantial and effective services before, during and subsequent to his trial. In accordance with the recommendation of the jury, (which found him guilty of felony murder) defendant has been sentenced to life imprisonment. For their professional services, well and faithfully performed, counsel are justly entitled to — and they are allowed — the sum of $2,000. They are also allowed the sum of $150 to compensate Francis D. Murphy, a handwriting expert whom they employed (by direction of the court during the trial) and who testified on the trial, in respect of a matter in which the ‘ ‘ affirmative presentation of evidence on the issue”- — -of handwriting — was “ incumbent on the defendant.” (Code Crim. Pro., § 308.) But the claim for personal and incidental expenses cannot lawfully be allowed, since the items on which it is based cannot be regarded as “ personal and incidental ” within the now fairly well-defined meaning of those words.
‘‘ The personal and incidental expenses for the payment of which provision is made are such as relate to those incurred by counsel on his personal account. The word ‘ incidental, ’ as used in the statute, is associated with the word ‘ personal, ’ and is used conjunctively. It does not confer authority upon the *1055 counsel to make contracts of a special character involving a large liability to be cast upon the county, * * *. The word ‘ incidental, ’ as used in the statute, must be construed in accordance with its ordinary meaning, which is: ‘Of minor importance, occasional, casual, as incidental expenses; ’ ‘ something subordinate or casual; often used in the plural to mean minor expenses. ’ (Century Dict.) ” (People ex rel. Cantwell v. Coler, 61 App, Div. 598, 599-600, affd. on prevailing opinion below, 168 N. Y. 643, 644.) “ The scope of the statute may have been uncertain at the outset. Judicial construction has combined with long-continued practice to narrow and define it.” (Matter of Reilly v. Berry, 250 N. Y. 456, 459.)
Specifically, the expense of looking up witnesses and seeing to the marshalling of evidence for use upon the trial, has been ruled out (Matter of Waldheimer, 84 App. Div. 366, 367-368). ‘ ‘ Bills for detectives * * * mount often into large figures. The State has charged its civil subdivisions with a restricted liability for the services of counsel. It has not charged them as an incident with an unrestricted liability for the services of others, not counsel, employed at a price to ferret out the evidence available against it.” (Matter of Reilly v. Berry, supra, p. 460.) Also excluded is the expense of securing the attendance of witnesses at pretrial interview (People ex rel. Van Zandt v. Prendergast, 157 App. Div. 486, 488-489) and at the trial itself. (Matter of Kraushaar v. Berry, 227 App. Div. 395, 396.) Thus, in this case, the expense incurred for the services of Antree Investigating Service in the conduct of investigation prior to and during the trial, in finding and interviewing witnesses, in securing their attendance at the trial, and for disbursements made by its head— (retired) detective Jacob Piazza — for telephone calls, presumably in furtherance of the investigation, cannot be met by an allowance under the statute.[1] Somewhat more doubtful — and so far as known, a case of first impression — is an item of $250 for secretarial service.
This expense appears to have been incurred in preparation for and during the trial, but in what connection is not disclosed. Nothing factual is shown to qualify— or disqualify — the item as a proper element of “ personal and incidental ” expense within the language of the statute, as thus far interpreted, and, of course, it cannot be allowed on a speculative basis. “ ‘ Only clear warrant of law will justify the assumption of a power to control the public purse ’ * * *.” (Cardozo, J., in Matter *1056 of Reilly v. Berry, supra, p. 460, quoting People ex rel. Rand v. Craig, 231 N. Y. 216, 221). What has already been said covers — in principle — such items as counsel’s office telephone expenses, “ miscellaneous expenses and subpcenaes to witnesses,” a “ telephone call * * * in search of a witness ”, certain other telephone and telegraphic communications with various prisons and prison personnel,[2] messenger service between counsel and a psychiatrist consulted by them in the defendant’s interests, and ' ‘ miscellaneous disbursements. ’ ’ The claim for personal and incidental expense is, then, denied completely, though regretfully. Under the statute, as interpreted by higher judicial authority, the court is powerless to do what it might otherwise conceive to be “ substantial justice.” In that situation, it joins a distinguished company of jurists who have found — with like regret — that they have no such power.
The fact that counsel are at all entitled to compensation for their services under an assignment to a pauper defendant is due to an act of grace by the Legislature. ‘‘ At common law, service as assigned counsel was given without pay * * *. So it still is, except in criminal actions where the offense charged in the indictment is punishable by death * * (Matter of Reilly v. Berry, supra, p. 459; cf., also, People ex rel. Hadley v. Supervisors, 28 How. Prac. 22, 24; People ex rel. Saunders v. Supervisors, 1 Sheld. 517; People ex rel. Ransom v. Supervisors, 78 N. Y. 622 [1879]; People ex rel. Brown v. Board of Supervisors, 3 How. Prac. [N. S.] 1, 3, affd. 39 Hun 654, opinion in 4 N. Y. Crim. Rep. 102, 108, affd. 102 N. Y. 691.) And when the Legislature first authorized compensation for the services of counsel in a capital case, it made no provision for reimbursement for their expenses, incurred in the discharge of their duties under the assignment. (Code Crim. Pro., § 308, as amd. by L. 1893, ch. 521.) It was in 1897 that the court was empowered to allow the personal and incidental expenses of counsel. (L. 1897, ch. 427.) But, as the profession soon discovered, the Legislature had not issued a blank check. Specifically, the cost of the services of experts was not covered by the statute, (People ex rel. Cantwell v. Coler, supra) so that in practical effect, such bills had to be met out of counsel’s pocket — or out of their statutory allowance. A like interpretation barred the expense of daily transcripts of the testimony (People ex rel. Levy v. Grout, 37 Misc. 430, 431-432) and, as it later developed, the court had no inherent power to order such transcripts at public expense. (Moynahan v. City of N. Y., 205 N. Y. 194, 196-197; *1057 Matter of Kenney v. Prendergast, 153 App. Div. 325, 326-327.) Eventually, the Legislature gave conditional authorization for payment of the expenses of experts (L. 1918, ch. 242; L. 1924, ch. 433; L. 1933, ch. 591) and daily transcripts (L. 1923, ch. 355) and to that extent relieved assigned counsel of some of their burden of self-denial in the defendant’s interests. The point, of course, is, that they have not been relieved entirely of that burden. They still bear it, though to a lesser degree than formerly, as a substantial remainder of an obligation — said to have originated very long ago — to obey an order of assignment for the defense of the destitute. (People ex rel. Brown v. Supervisors, supra; Matter of Reilly v. Berry, supra.)
From very early times, the performance of gratuitous service for the poor has been regarded as part of the obligation assumed by counsel upon his admission to the Bar. (People ex rel. Acritelli v. Grout, 87 App. Div. 193, 196, aifd. on prevailing opinion below, 177 N. Y. 587; People v. Price, 262 N. Y. 410, 412.) “ I confess ”, said Judge Ingalls, “lam unable to discover upon what equity the demand of such service of the profession without compensation, is based.” (People ex rel. Hadley v. Supervisors, supra, p. 26.[3] Moreover, the gratuity which the attorney conferred upon his client — by — assignment included his out-of-pocket disbursements. (People ex rel. Ransom v. Supervisors, supra.)[4] But for the statute that would still be so, and except so far as the statute, as interpreted, permits a different though limited course of action by the courts, it still is so.[5]
One purpose of the statute — to relieve assigned counsel of his former duty to render service without any compensation or reimbursement whatever — is counterbalanced by another — to limit demands upon the public treasury. The courts must honor *1058 both. As a consequence, there have been and will continue to be cases — and this is such a case — in which counsel who have a high regard for the duty which they owe to the defendant and to the court, incur substantial expenses, necessarily, in order to make and, if possible, sustain a defense to the charge. Almost invariably — and such is the case here — counsel who put themselves in that position are of such professional caliber as to deserve much better compensation than the law allows. But the State has not assumed to furnish adequate compensation. It provides only for some compensation. Neither has it authorized complete reimbursement. It has seen fit to permit only a limited reimbursement. The result is unjust. An attorney does not have the same full measure of human rights enjoyed by his neighbors. In other than a capital case his services can be commandeered, without reward. And in a capital case the limited compensation allowed him — inadequate to begin with — is diminished by his very devotion to duty since he cannot be reimbursed in full for expenses which, in good conscience, must be made in aid of the defense. But, as has often been said, the remedy must be supplied by the Legislature, and not by the courts. Therefore, as must now be apparent, the denial to the moving parties of the allowance they seek for “ personal and incidental expenses ” follows as a matter of law and not as a matter of discretion.
Submit order accordingly.

 The moving papers show no facts which would justify a direction to pay witness-expenses under the authority of Code Crim. Pro., § 617.

 The defendant in this case was kept in a local prison.

 An attorney who had pleaded in vain to be relieved of the assignment, waged a three-year contest and gained an ultimate acquittal for a defendant charged with murder. His effort to secure compensation was defeated.

 A special act of the Legislature (L. 1873, ch. 712) was required to regain some $445 laid out by assigned counsel in one capital case. (People ex rel. Saunders v. Supervisors, supra.)

 In the Cantwell case (supra) counsel incurred an expense of $950 for experts, as against their statutory allowance of $500. The law then did not provide for expert services at public expense. The Kraushaar case (supra) was an outgrowth of the Moran ease in which the effort was to establish, as a defense, a defect of reason induced by epilepsy. (People v. Moran, 246 N. Y. 100; 249 N. Y. 179, 181.) To sustain the defense, counsel paid to the Navy, in advance, some $423.80 for the travel-expense (California to New York and return) of a sailor who had probably seen the defendant in an epileptic seizure in a naval hospital. Thus, the attendance of the witness at the trial was secured. But the item was disallowed.